Susanne C. GAUDIN, Robyn Rosenberg, Christopher Answorth, Paul Colvin, Janet Kramer, and Leonard A. Murray, Appellants–Petitioners,

v.

J.W. AUSTIN, President, Darrell L. Kent, Vice President, Mary H. Fouch, as County Commissioners of Brown County, Indiana, Appellees–Respondents.

No. 07A04–0909–CV–534.

Court of Appeals of Indiana.

Feb. 26, 2010.

E. Paige Freitag, Bauer & Densford, William C. Lloyd, Lloyd Law Office, Bloomington, IN, Attorneys for Appellant.

Stephen R. Buschmann, Thrasher Buschmann Griffith & Voelkel, P.C., Indianapolis, IN, Attorney for Appellee.

## OPINION

MAY, Judge.

In September of 2007, the Brown County Commissioners enacted an ordinance establishing a fire district. In January 2009, after two new Commissioners were elected, the Commissioners enacted an ordinance purporting to dissolve the district. No petition to dissolve the district or to repeal the ordinance establishing it had been filed. Soon thereafter, Gaudin and the other plaintiffs sought declaratory and injunctive relief, alleging the dissolution ordinance was void because no petition had been filed.

The trial court granted summary judgment for the Commissioners: "there is nothing to compel a conclusion that a governing body with the authority to establish a Fire Protection District does not have a similar authority to dissolve a district by ordinance, particularly one established by ordinance." (App. at 11.)

We reverse.

## DISCUSSION AND DECISION

When we review the grant or denial of summary judgment, we use the same standard as the trial court. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Sanders v. Board of Comm'rs of Brown County*, 892 N.E.2d 1249, 1251 (Ind.Ct.App.2008), *trans. denied* 915 N.E.2d 978 (Ind.2009). Where, as here, the interpretation of a statute is at issue, such statutory interpretation presents a pure question of law for which summary judgment is particularly appropriate. *Id.* at 1252. Where the issue presented on appeal is a pure question of law, we review the matter *de novo. Id.*

The goal of statutory construction is to determine, give effect to, and implement the intent of the General Assembly. *Id.* We presume the legislature intended the language used in a statute to be applied logically and not to bring about an unjust or absurd result. *Id.* Statutes relating to the same general subject matter are *in pari materia* and should be construed together so as to produce a harmonious statutory scheme. *Id.* To determine legislative intent, we read the sections of an act together so that no part is rendered meaningless if it can be harmonized with the remainder of the statute. *Id.* If two statutes or two sets of statutes appear inconsistent in some respects, but can be ration-

alized to give effect to both, then we are obliged to do so. *Id.*

In *Sanders,* the Brown County Commissioners passed an ordinance creating a county-wide fire protection district.[1] Ind. Code § 36–8–11–5(a) provides: "Freeholders who desire the establishment of a fire protection district must initiate proceedings by filing a petition in the office of the county auditor of the county where the freeholder's land is located." Some citizens sued the Commissioners seeking injunctive relief and requesting a declaratory judgment that the ordinance was void because no petition by county landowners had been filed.

The trial court granted summary judgment for the Commissioners: "It appears upon reading [chapter 36–8–11] in harmony and as part of a uniform system of jurisprudence, the Indiana Legislature intended to give freeholders the ability to create a fire protection district even if the county legislative body refuses to do so." *Id.* at 1251. We affirmed, agreeing a fire protection district could be created in either of two ways: the county commissioners may create a fire protection district pursuant to Ind.Code § 36–8–11–4 (listing the purposes for which a legislative body may establish districts), or freeholders may file a petition with their County Auditor pursuant to Ind.Code § 36–8–11–5. *Id.* at 1254.

While chapter 36–8–11 explicitly provides in two discrete sections for establishment of a district either by ordinance or by freeholder petition, it addresses dissolution of a fire protection district in only one section, which sets forth only one method of dissolution. Ind.Code § 36–8–11–24 provides in pertinent [2] part:

> (a) Proceedings to dissolve a fire protection district may be instituted by the filing of a petition with the county legislative body that formed the district.

> \*     \*     \*     \*     \*     \*

> (b) The petition must be signed:

> (1) by at least twenty percent (20%), with a minimum of five hundred (500), of the freeholders owning land within the district; or

> (2) by a majority of those freeholders owning land within the district; whichever is less.

> (c) ... the provisions of section 8 of this chapter concerning a petition to establish a district apply to a dissolution petition.

> \*     \*     \*     \*     \*     \*

> (e) ... a petition against the dissolution of the fire protection district may be presented to the county legislative body at or after a hearing on the petition to dissolve a district and before the adoption of an ordinance or resolution dissolving the district. If the legislative body finds that it contains the signatures of fifty-one percent (51%) of the freeholders within the district or of the freeholders who own two-thirds (2/3) of the real property within the district, determined by assessed valuation, the legislative body shall dismiss the petition for the dissolution of the district.

> \*     \*     \*     \*     \*     \*

> (g) If, after the public hearing, the legislative body determines that dissolution

---

1. That district is the same fire protection district at issue in the case before us.

2. Many of the provisions of this section are limited to proceedings "for dissolution of a district to which section 5.1 of this chapter applies." Ind.Code § 36–8–11–24. That section governs multi-county districts and is not relevant to the case before us.

should occur, it shall adopt an ordinance dissolving the district.

\*     \*     \*     \*     \*     \*

(i) A person aggrieved by a decision *made by the county legislative body or county legislative bodies under this section* may, within thirty (30) days, appeal the decision to the circuit court for any county in which the district is located.

(Emphasis supplied.) The statute has no other general provision for dissolution of a district, nor does it include a provision addressing dissolution by the Commissioners specifically.

The Commissioners argue they had authority to dissolve the district without a petition pursuant to the "Home Rule" statute, which provides:

(b) A unit has:

(1) all powers granted it by statute; and

(2) all other powers necessary or desirable in the conduct of its affairs, even though not granted by statute.

(c) The powers that units have under subsection (b)(1) are listed in various statutes. However, these statutes do not list the powers that units have under subsection (b)(2); therefore, the omission of a power from such a list does not imply that units lack that power.

Ind.Code § 36–1–3–4.

But Ind.Code § 36–1–3–6 provides that "[i]f there is a constitutional or statutory provision requiring a specific manner for exercising a power, a unit wanting to exercise the power must do so in that manner." Ind.Code § 36–8–11–24, which explains how "[p]roceedings to dissolve a fire protection district may be instituted," is such a "statutory provision requiring a specific manner for exercising a power." Thus, the Commissioners did not have authority to dissolve the district by ordinance.

The Commissioners rely on *Romine v. Gagle*, 782 N.E.2d 369, 379 (Ind.Ct.App. 2003), *trans. denied* 804 N.E.2d 750 (Ind. 2003), where we noted the general rule that "[w]hen the word 'shall' appears in a statute, it is construed as mandatory rather than directory unless it appears clear from the context or the purpose of the statute that the legislature intended a different meaning." "The term 'may' in a statute ordinarily implies a permissive condition and a grant of discretion." *Id.* at 380. The statute addressed in *Romine* said a person seeking the removal of a drainage obstruction "may file a petition under" the Drainage Obstruction Act, and *Romine* had not "offered any persuasive argument to justify a departure from that usual rule of construction." *Id.*

While we acknowledge that "ordinary" implication of the word "may," *Romine* does not control for three reasons. First, our holding in *Romine* that the legislature did not intend the Drainage Obstruction Act to "be the exclusive means of first resort for disputes of the sort involved here," *id.*, was premised on our analysis of the pre-existing common law on the same topic:

Our research leads us to conclude that the Drainage Obstruction Act adds to the substantive common-law primarily in that it permits complaining parties to seek redress for a dispute, not only in state superior and circuit courts, but also before the appropriate county drainage board. Viewed against this historical backdrop, it appears that the Drainage Obstruction Act did not so much change the common-law as it created an alternative forum for deciding such disputes. As reviewed above, the common-law developed two alternate outcomes, one favoring the obstruction builder (where the common enemy doctrine applies), the other favoring the

complaining neighbor (where the court found a natural watercourse or pond was involved).[3] It appears that the Drainage Obstruction Act addresses and expands upon the law as it developed in the latter circumstance.

*Id.* at 379 (footnote added). The Commissioners direct us to no pre-existing common law to support a conclusion the legislature intended to "address and expand upon" existing authority that would permit dissolution of a fire district by the Commissioners.

Second, other subsections of the dissolution statute support the conclusion it was not intended as merely an alternative means of dissolving a district.[4] After a petition is filed, it must be presented at a meeting of the commissioners, where the commissioners must determine whether it includes enough signatures and complies with form and content requirements. If the petition has the requisite signatures, the commissioners cannot dismiss it because of defects without permitting amendments to correct the errors in form or content. Ind.Code § 36–8–11–8(a).[5]

The dissolution statute, unlike the statute governing creation of a district, also includes a provision for a petition *against* dissolution of the district. If such petition "contains the signatures of fifty-one per-

cent (51%) of the freeholders within the district or of the freeholders who own two-thirds (2/3) of the real property within the district, determined by assessed valuation, the legislative body shall dismiss the petition for the dissolution of the district." Ind.Code § 36–8–11–24(e). The statute contemplates the commissioners will not dissolve a district until after a public hearing: "If, *after the public hearing,* the legislative body determines that dissolution should occur, it *shall adopt an ordinance* dissolving the district." Ind.Code § 36–8–11–24(g) (emphasis supplied). Finally, "A person aggrieved by a decision made by the [commissioners] under this [dissolution by petition] section may, within thirty (30) days, appeal the decision to the circuit court for any county in which the district is located." Ind.Code § 36–8–11–24(i).

It is apparent from the various requirements of freeholder involvement underlying the statutory provision for dissolution of a fire district, and for objecting to the dissolution, that the legislature did not intend this procedure could be avoided by a unilateral act of the Commissioners.

Finally, we do not believe the word "may" in the dissolution section represents, as the Commissioners assert, a "permissive methodology" that permits citizens to petition for dissolution but "does not

---

3. Under the common enemy doctrine, surface water that does not flow in defined channels is classified as a common enemy and each landowner may deal with it in such manner that is most fitting under the circumstances. *Romine v. Gagle,* 782 N.E.2d 369, 381 (Ind.Ct. App.2003). The doctrine does not apply, however, to protect a landowner who alters or interferes with a natural watercourse unless the impact on the natural watercourse is minimal. *Id.*

4. The Commissioners rely on our statement in *Corn v. City of Oakland City,* 415 N.E.2d 129, 131 (Ind.Ct.App.1981), that "the power to en-

act ordinances has as a necessary incident thereto the power to repeal." We question the Commissioners' premise that the dissolution of a fire district, for which the legislature has imposed a detailed multi-step procedure, equates to a simple "repeal" of an ordinance.

5. Pursuant to the dissolution statute, Section 8's requirements for a petition to create a district also apply to petitions to dissolve one. Ind.Code § 36–8–11–24 ("the provisions of section 8 of this chapter concerning a petition to establish a district apply to a dissolution petition").

restrict the commissioners' general authority to repeal politically unpopular ordinances." (Appellees' Br. at 10.) If an ordinance is "politically unpopular," a citizen petition will presumably be forthcoming. An interpretation of the meaning of "may" that is more consistent with the rest of the statute is that *filing a petition* to dissolve a district is permissive—that is, freeholders who are satisfied with their fire protection district are not required by law to try to dissolve it.

We reverse the summary judgment for the Commissioners and direct entry of summary judgment for the plaintiffs.

Reversed.

KIRSCH, J., and DARDEN, J., concur.