# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**DAVID M. AUSTGEN**
**MICHAEL J. JASAITIS**
Austgen Kuiper & Associates, P.C.
Crown Point, Indiana

**MICHAEL J. RAPPA**
Johnson, Rappa & Ivancevich, LLC
Merrillville, Indiana

ATTORNEY FOR APPELLEES:

**KAREN TALLIAN**
Portage, Indiana



FILED

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TOWN OF CEDAR LAKE, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1207-PL-316 |
| | ) | |
| GINA ALESSIA, CANDI REILING, ANDREW | ) | |
| BALKEMA, Individually and as Members of the | ) | |
| Town of Cedar Lake Park Board, | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Diane Kavadias-Schneider, Judge
Cause No. 45D01-1104-PL-19

**March 21, 2013**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

The Town of Cedar Lake (the "Town") dissolved its Parks and Recreation Department (the "Parks Department") and its Parks and Recreation Board (the "Park Board"). The Town appeals the trial court's partial grant of summary judgment for Gina Alessia, Candi Reiling, and Andrew Balkema, individually and as members of the Park Board (the "Park Board Members"), on their complaint against the Town and others. The Town raises two issues for our review, which we restate as the following four issues:

1.    Whether the trial court erred as a matter of law when it disregarded Indiana's Home Rule Act in determining the validity of the Town's action;

2.    Whether the trial court erred as a matter of law when it ordered the Town to reinstate the Park Board Members to their official positions;

3.    Whether the trial court erred as a matter of law when it enjoined the Town from "interfering in the workings" of the Park Board, Appellant's App. at 48; and

4.    Whether the undisputed evidence supports the trial court's judgment that the law firm of Austgen Kuiper & Associates, P.C. (the "law firm") may represent the Town but not the Park Board Members.

We affirm in part, reverse in part, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

On March 1, 2011, during a regular meeting of the Town Council for the Town of Cedar Lake (the "Town Council"), the Town Council terminated the Park Board Members' positions on the Park Board and voted in new members. On April 12, the Park Board Members filed a complaint against the Town and the members of the Town Council, among others, alleging that they had been improperly removed from their positions and seeking reinstatement, back pay, and an injunction against the Town

Council to prohibit it "from taking any action that would hinder, stop, or otherwise prevent the [Park Board Members] from acting in their official capacity." Id. at 40.

On April 26, the Town Council held a public meeting after public notice. At that meeting, the newly appointed members of the Park Board each resigned their positions, and the Town Council accepted their resignations. The Town Council then heard Ordinance 1129 (the "Ordinance"), which sought to dissolve the Park Board and the Parks Department.

On April 28, at another public meeting held after public notice, the Town Council reinstated the Park Board Members and authorized payment of back pay up to April 28 in response to their complaint. The Town Council then adopted the Ordinance. The Ordinance begins:

> WHEREAS, the [Town Council] has determined it appropriate to restructure and reorganize the Town Parks and Recreation function and services, as currently established by enabling Ordinances and Town Code provisions; and
>
> WHEREAS, the Town Council has determined it appropriate and advisable to restructure and reorganize the Town Parks and Recreation function and services . . . as such restructuring and reorganization is in the best interests of the residents of the Town for the park and recreation functions and services to be provided by the Town to its residents.

Id. at 191. The Ordinance then repealed the provisions of the Town Code that had established the Parks Department and the Park Board and replaced those provisions with new provisions. The new provisions stated that the "Town Council shall have full authority and responsibility to establish, aid, maintain and operate all public and park-owned park, playground, recreational facilities, programs and properties," and that the Town Council "shall have and exercise all powers necessary to establish, aid, maintain

3

and operate public parks, playgrounds, recreational facilities, programs and properties, including the authority to hire and fix the compensation of a Park Director and such other personnel as the Town Council deems appropriate." Id. The Ordinance also included Town Code provisions to allow the Town Council to establish advisory committees "interested in the Town public parks, playgrounds, recreational facilities, programs and properties"; to allow the Town Council to "establish comprehensive rules and regulations for the governance of park land, property, activities and employees"; and to hire a Park Director, whose qualifications, powers, and duties were further defined. Id. at 192.

On May 24, the trial court held a hearing on the Park Board Members' request for a preliminary injunction. At that hearing, counsel for the Park Board Members expressly acknowledged that "it's within the rights of a town to dissolve a park board by ordinance. That's clear in the statute."[1] Id. at 216. Instead of challenging the Town's legal authority to dissolve the Parks Department and the Park Board, the Park Board Members instead asserted that the Ordinance was not passed in accordance with Indiana's Open Door Law.[2] However, on June 20, before the trial court had ruled on their request for a preliminary injunction, the Park Board Members filed their First Amended Complaint. In addition to their original claims, the Park Board Members further alleged that the Ordinance was "ultra vires, improper, and not authorized by statute." Id. at 69. On June 22, the trial court denied the Park Board Members' request for a preliminary injunction.

---

[1] Though counsel for the Park Board Members was not specific as to which statute she was referring, for the reasons discussed below we presume she was referring to Indiana's Home Rule Act.

[2] The Park Board Members do not present this argument on appeal.

4

Thereafter, the parties filed cross motions for summary judgment. The court held a hearing on the parties' motions and, on May 14, 2012, the court granted partial summary judgment in favor of the Park Board Members. Specifically, the court determined that the Town Council had illegally terminated the Park Board Members' employment; that the Ordinance "was improper[] and beyond the scope of [the Town Council's] authority under the Indiana Code"; and that the Town should be "enjoined from interfering in the workings of the Parks & Recreation Board," and that the Park Board be "re-instated and the parties returned to the status quo" as of March 1, 2011. Id. at 48. The court further determined that

> the law firm . . . may continue to represent the [Town] in this action. However, it would be a conflict of interest for [it] to continue to represent the [Park Board] and the [Park Board Members] in any matters as the present interests of the Town and the Park Board are in opposition.

Id. The court then stayed its order pending appeal.[3] The court directed its order to be entered as a final judgment pursuant to Indiana Trial Rule 54(B),[4] and this appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

As an initial matter, we note that the trial court entered findings and conclusions in its order on summary judgment. But, contrary to the Park Board Members' assertions on appeal, this "does not alter our standard of review, nor are we bound by the trial court's specific findings and conclusions . . . ." Dible v. City of Lafayette, 713 N.E.2d 269, 272

---

[3] Between the trial court's denial of the Park Board Members' request for a preliminary injunction and the stay of its summary judgment order, the Park Board has not met since the Town enacted the Ordinance on April 28, 2011.

[4] In its order on partial summary judgment, the trial court withheld judgment on damages pending an evidentiary hearing, which the trial court also stayed pending appeal.

n.2 (Ind. 1999). Rather, in a summary judgment, the trial court's findings and conclusions "merely aid our review by providing us with a statement of reasons for the trial court's actions." Id.

Our standard of review for summary judgment appeals is well established:

When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment a matter of law." In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.

Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1269-70 (Ind. 2009) (citations omitted). Where the facts are undisputed and the issues presented are pure questions of law, we review the matter de novo. Crum v. City of Terre Haute ex rel. Dep't of Redev., 812 N.E.2d 164, 166 (Ind. Ct. App. 2004).

Here, the Town asserts that the trial court ignored the Town's authority under Indiana's Home Rule Act when the court determined that the Town had illegally dissolved the Park Board and the Parks Department. The Town further asserts that the trial court erred as a matter of law when it ordered the Town to reinstate the Park Board Members and enjoined the Town from "interfering in the workings of the Parks & Recreation Board." See Appellant's App. at 48. Finally, the Town contends that the court erred as a matter of law when it determined that "it would be a conflict of interest

6

for [the law firm] to continue to represent the . . . Park Board and the members of the Park Board in any matters as the present interests of the Town and the Park Board are in opposition." Id. We address each of the Town's arguments in turn.

**Issue One: Indiana's Home Rule Act**

The Town first contends that the trial court erred as a matter of law when it accepted the Park Board Members' several arguments that the Town lacked legal authority to dissolve the Park Board and the Parks Department. This issue requires this court to interpret various statutes. Statutory interpretation is a question of law reserved for the court and is reviewed de novo. Ind. Pesticide Rev. Bd. v. Black Diamond Pest & Termite Control Inc., 916 N.E.2d 168, 181 (Ind. Ct. App. 2009) (quotation omitted), trans. denied. De novo review allows us to decide an issue without affording any deference to the trial court's decision. Id. Our goal in statutory construction is to determine, give effect to, and implement the intent of the legislature. Id. When a statute has not previously been construed, our interpretation is controlled by the express language of the statute and the rules of statutory construction. Id. We review the statute as a whole and presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. See Curley v. Lake County Bd. of Elections & Registration, 896 N.E.2d 24, 34 (Ind. Ct. App. 2008) (quotation omitted), trans denied.

The Indiana Supreme Court recently described the import of Indiana's Home Rule Act:

> Like many other states, Indiana historically adhered to the Dillon Rule that
> a municipal corporation could exercise only the following powers:

7

First, those granted in <u>express words</u>; second, those <u>necessarily or fairly implied in</u>, or <u>incident</u> to, the powers expressly granted; third, those <u>essential</u> to the declared objects and purposes of the corporation—not simply convenient, but indispensable.

<u>Tippecanoe Cnty. v. Ind. Mfr.'s Ass'n</u>, 784 N.E.2d 463, 465 (Ind. 2003) (citing Dillon, Municipal Corporations (1st ed. 1872) (emphasis in original)). A corollary rule of construction required that a court resolve any reasonable doubt concerning the existence of a power against the corporation and enjoin the corporation from exercising it. <u>See</u> <u>id.</u>

Under the Dillon Rule, a person who simply found himself on the wrong side of some local action could easily challenge that action by essentially arguing that it was <u>ultra</u> <u>vires</u>. <u>See, e.g.</u>, <u>City of S. Bend v. Chicago, S.B. & N.I. Ry. Co.</u>, 179 Ind. 455, 458, 101 N.E. 628, 629 (Ind. 1913) ("[T]he charter of South Bend delegated no power for the enforcement of the ordinance in controversy . . . ."). The resulting legal landscape handcuffed municipal corporations, preventing them from taking a wide range of governmental actions we might find commonplace today. <u>See, e.g.</u>, <u>Pittsburgh, C., C. & St. L. Ry. Co. v. Town of Crown Point</u>, 146 Ind. 421, 45 N.E. 587 (1896) (town could not enforce ordinance requiring railroad to post watchmen and maintain gates at crossings at railroad's expense because statute authorizing ordinances to prevent nuisances did not provide so specifically).

Recognizing the disadvantages of the Dillon Rule, the Legislature abrogated it in 1971, when it passed the Indiana Powers of Cities Act. Act of April 14, 1971, P.L. 250–1971, § 1, 1971 Ind. Acts 955, 967. The Legislature expanded the applicability of this reforming principle in 1980, when it passed the Indiana Home Rule Act. Act of February 27, 1980, P.L. 211–1980, § 1, 1980 Ind. Acts 1657, 1659-62 (codified as amended at Ind. Code §§ 36-1-3-1 to -9 (2007)). In addition to reaffirming the abrogation of the Dillon Rule, the Home Rule Act provides that[,] in general, a unit is presumed to possess broad powers of local government, unless the Indiana Constitution or a statute expressly denies the unit that power, or expressly grants it to another entity. Ind. Code § 36-1-3-5 (2007); <u>see also</u> <u>City of Gary ex rel. King v. Smith & Wesson Corp.</u>, 801 N.E.2d 1222 (Ind. 2003) (city could file public nuisance claim against handgun manufacturer when statute authorizing public nuisance claims did not specifically address regulating handguns).

<u>Kole v. Faultless</u>, 963 N.E.2d 493, 495-96 (Ind. 2012).

Here, the Park Board Members raise four arguments against the Town's authority to dissolve the Park Board and the Parks Department, each of which the trial court adopted in its summary judgment order. Specifically, the Park Board Members assert: (1) the Indiana Code "is silent and gives no explicit authorization" for the dissolution of a parks department, Appellees' Br. at 6; (2) Indiana's Home Rule Act provides no authority for the Town to dissolve the Park Board or the Parks Department; (3) Indiana Code Chapter 36-10-3 establishes "a comprehensive legislative scheme" that preempts any authority the Town may have under the Home Rule Act, id. at 9; and (4) any authority the Town had to repeal is original enactments establishing the Park Board and the Parks Department is subject to the common law limitations discussed in Corn v. City of Oakland City, 415 N.E.2d 129 (Ind. Ct. App. 1981). We address each of these four proffered rationales in turn.

Statutory Silence

The Park Board Members first assert that the Town exceeded its legal authority when it enacted the Ordinance because the Indiana Code "is silent and gives no explicit authorization" for the dissolution of a parks department. Appellees' Br. at 6. The trial court agreed with the Park Board Members. The court erred as a matter of law.

Under Indiana's Home Rule Act, unless an act is prohibited it is allowed. This paradigm has replaced the common law rules relied on by the trial court for analyzing the power behind a municipality's authority. See Kole, 963 N.E.2d at 495-96. In particular, Indiana Code Section 36-1-3-3 is unambiguous: "(a) The rule of law that any doubt as to the existence of a power of a unit shall be resolved against its existence is abrogated. (b)

9

Any doubt as to the existence of a power of a unit shall be resolved in favor of its existence." Further: "The rule of law that a unit has only[ ]powers expressly granted by statute . . . is abrogated." I.C. § 36-1-3-4. Instead, as a general rule, "a unit may exercise any power it has to the extent that the power[ ]is not expressly denied by the Indiana Constitution or by statute." I.C. § 36-1-3-5.

In agreeing with the Park Board Members' argument, the trial court expressly relied on Vesenmeir v. City of Aurora, 232 Ind. 628, 115 N.E.2d 734, 737 (Ind. 1953), a sixty-year-old case in which the Indiana Supreme Court stated that "doubtful claims to power, as well as any uncertainty or ambiguity in the terms used by the legislature[,] are resolved against the [municipal] corporation." That proposition was based on Indiana law prior to the 1980 enactment of the Home Rule Act, is plainly contrary to the language of the Home Rule Act, and has been expressly abrogated by the Act. See Kole, 963 N.E.2d at 495-96. As such, the Park Board Members' contention, with which the trial court agreed, that the Town needed express statutory authorization to pass the Ordinance is contrary to Indiana law.

Prohibition Under the Home Rule Act

The Park Board Members next argue that Indiana Code Section 36-1-3-8 explicitly prohibits the Town from abolishing the Park Board and the Parks Department. That statute provides: "a unit does not have the following: . . . (3) The power to impose duties on another political subdivision, except as expressly granted by statute." I.C. § 36-1-3-8. Because parks are special taxing districts, they are political subdivisions. See I.C. § 36-1-

10

2-13. The Park Board Members continue by claiming that the "elimination of a Park Board shrinks . . . its duties to zero." Appellees' Br. at 9.

The Park Board Members' novel reading of Indiana Code Section 36-1-3-8 requires that this court interpret the statute. As noted above, when a statute has not previously been construed, our interpretation is controlled by the express language of the statute and the rules of statutory construction. See Ind. Pesticide Rev. Bd., 916 N.E.2d at 181. Here, the express statutory language prohibits a unit from "impos[ing] duties" on another political subdivision. I.C. § 36-1-3-8. To "impose" is "to give or bestow . . . authoritatively or officially." Webster's 3d New Int'l Dictionary 1136 (2002). A "duty" is an "obligatory task[], conduct, service, or function[] . . . ." Id. at 705. The dissolution of the Park Board and the Parks Department is not equivalent to giving obligatory tasks or functions to them, which is what Indiana Code Section 36-1-3-8 prohibits. And, again, "[a]ny doubt as to the existence of a power of a unit shall be resolved in favor of its existence." I.C. § 36-1-3-3. Accordingly, Indiana Code Section 36-1-3-8 does not prohibit the Town from abolishing the Park Board and the Parks Department.

Comprehensive Legislative Scheme

The Park Board Members also argue that Indiana's park and recreation laws, Indiana Code Sections 36-10-3-1 to -45, evidence a comprehensive legislative scheme that preempts the Town's authority to abolish the Parks Department and the Park Board. The trial court agreed and found particularly persuasive Indiana Code Section 36-10-3-3, which states:

> (a) The fiscal body of a unit may adopt an ordinance creating a department of parks and recreation and repealing in the ordinance or resolution prior

ordinances or resolutions creating separate park and recreation authorities. The department consists of a park and recreation board, a superintendent, and other personnel that the board determines.

(b)  After a board has been created, all books, papers, documents, and other property of former park and recreation authorities shall be transferred to and become the property of the board.

The remainder of that chapter of the Indiana Code describes such events as the appointment and removal of park board members; the duties and salaries of the members of the park board; regular and special meetings of park boards; the assumption of gifts by park boards for their departments; tax implications of parks; fees that can be levied by a parks department; and the acquisition of property by a parks department.

While those provisions demonstrate a thoughtful legislative framework for the operation of park boards and parks departments, there is no language in those statutes that suggests the General Assembly sought to tie the hands of municipalities that create park boards and parks departments so as to prevent reconsideration of those decisions. Indeed, conspicuously absent from Indiana Code Chapter 36-10-3 is any restriction on a municipal corporation's authority to dissolve a park board and parks department. And, as plainly described by our Home Rule statutes, "a unit may exercise any power it has to the extent that the power[ ]is not expressly denied by the Indiana Constitution or by statute." I.C. § 36-1-3-5. The Park Board Members' argument, and the trial court's conclusion, that Chapter 36-10-3 implicitly preempts the Town's authority to act in a manner not otherwise expressly provided for by the Indiana Code is contrary to law.[5]

---

[5]  In support of this position, the Park Board Members reference a 1930 opinion of the Attorney General, which discussed sanitation districts. We do not consider that document in light of the clear, binding, and current Home Rule statutes. Nor is this case similar to either Gaudin v. Austin, 921 N.E.2d 895, 899 (Ind. Ct. App. 2010), aff'd by an equally divided court, 936 N.E.2d 1241 (Ind. 2010), in which

Finally, in entering judgment for the Park Board Members, the trial court relied extensively on this court's opinion in <u>Corn v. City of Oakland City</u>. In <u>Corn</u>, we considered a municipality's pre-Home Rule Act attempt to repeal a prior enactment in which the municipality had created a judicial office. In considering the municipality's attempted repeal of its prior enactment, we described the municipality's common law authority to repeal prior enactments:

> It is well settled that the power to enact ordinances has as a necessary incident thereto the power to repeal unless that power is restricted in the law conferring it. <u>Vesenmeir v. City of Aurora</u>, (1953) 232 Ind. 628, 115 N.E.2d 734; <u>Mahuron v. City of Salem</u>, (1950) 120 Ind. App. 247, 91 N.E.2d 648; 20 I.L.E., Municipal Corporations, § 60 (1959); 56 Am. Jur. 2d, Municipal Corporations, § 410 (1971); 62 C.J.S. Municipal Corporations, § 435 (1948). However, the power to repeal is subject to the limitation that no vested rights acquired under the ordinance sought to be repealed can be adversely affected. <u>Vesenmeir</u>, <u>supra</u>; <u>Mahuron</u>, <u>supra</u>; 20 I.L.E., Municipal Corporations, § 60 (1959); 56 Am. Jur. 2d, Municipal Corporations, § 410 (1971). Neither can repeal impair any contractual obligations. 56 Am. Jur. 2d, Municipal Corporations, § 410 (1971). Further, the rule that the power to repeal is necessarily implied from the power to enact does not apply "where the ordinance has been enacted under a narrow, limited grant of authority to do a particular designated thing in the manner and at the time fixed by the legislature, and which excludes the implication that the council was given any further authority over the subject than to do the one act." <u>Vesenmeir</u>, <u>supra</u>, 232 Ind. at 632-33, 115 N.E.2d 734; <u>Simpson v. State, ex rel.</u>, (1912) 179 Ind. 196, 99 N.E. 980.

---

we held that a municipality could not unilaterally dissolve its fire district in light of a statute that expressly provided for the manner of dissolution of such districts, or <u>County Council of Porter County v. Northwest Indiana Regional Development Authority</u>, 944 N.E.2d 519, 525-26 (Ind. Ct. App. 2011), <u>trans. denied</u>, in which we held that a county did not have the right to withdraw from the General Assembly's express placement of that county in a regional development authority. We also note that the Park Board Members do not suggest that Indiana Code Section 36-10-3-6, which allows the removal of park board members "only for cause," should be interpreted as a restriction on the Town's apparent authority to dissolve the Park Board in its entirety.

415 N.E.2d at 131-32. We further recognized that "abolition of [an] office must be done in good faith." Id. at 132 n.2 (citing 56 Am. Jur. 2d, Municipal Corporations, § 239 (1971); 62 C.J.S. Municipal Corporations § 467 (1948)).

The common law described in Corn and relied on by the Park Board Members and the trial court is based on Dillon's Rule that preceded the Home Rule Act. For example, nearly identical language to the language in Corn appears in Welch v. Bowen, 103 Ind. 252, 2 N.E. 722, 724 (1885). In that case, the Indiana Supreme Court cited Dillon on Municipal Corporations for the following statement:

> The general rule is that the power to pass bylaws, or ordinances, or regulations affecting the government of a municipal corporation carries with it by implication the power to modify or repeal such bylaws, ordinances, and regulations unless the power is restricted in the law conferring the right. The limitation to which this power is subject is that the repeal or change cannot be made so as to affect any vested right lawfully acquired under an order or regulation lawfully adopted.

Id. And Corn itself based its statements of the law on Vesenmeir and other authorities that preceded Indiana's Home Rule Act.

Accordingly, we do not consider the Park Board Members' arguments that they are entitled to summary judgment based on one or several of the reasons stated in Corn.[6]

---

[6] Included in these arguments are the Park Board Members' assertions that the Town's repeal of its original enactments adversely affected vested property rights, impaired contractual obligations, interfered with the General Assembly's statutory scheme for parks (this is repetitious to the argument addressed above), and was done in bad faith. Further, the Park Board Members' passing references to Article I, Section 21 of the Indiana Constitution do not present an argument supported by cogent reasoning for this court to decide. See Ind. Appellate Rule 46(A)(8)(a).

Although we need not decide these arguments, we do note that the Town takes particular exception to the trial court's determination that the Town acted in bad faith when it abolished the Park Board and the Parks Department. According to the Ordinance, the Town Council had determined that "restructuring and reorganization is in the best interests of the residents of the Town . . . ." Appellant's App. at 191. Thus, the Town continues, the trial court's substitution of its judgment for the Town's was "judicial usurpation." Appellant's Br. at 17; see Bd. of Comm'rs v. Three I Props., 787 N.E.2d 967, 976

The law recited in <u>Corn</u> was based on Dillon's Rule, and it has been abrogated by Indiana's Home Rule Act. <u>See</u> <u>Kole</u>, 963 N.E.2d at 495-96. And the Park Board Members cite no modern authority in support of any of the limitations described in <u>Corn</u>. <u>See</u> Ind. Appellate Rule 46(A)(8)(a). Again, under the paradigm of Indiana's Home Rule Act, the Town's authority to enact the Ordinance and repeal its prior enactments is not expressly denied by the Indiana Constitution or by statute. <u>See</u> I.C. § 36-1-3-5. Thus, the Town acted within its authority under Indiana's Home Rule Act when it abolished the Park Board and the Parks Department. The trial court's determination that the Town must satisfy the requirements of Dillon's Rule, as described in <u>Corn</u> or otherwise, is contrary to law.

### Issue Two: Reinstatement of the Park Board Members

The Town next asserts that the trial court erred as a matter of law when it ordered the Town to reinstate the Park Board Members to their positions on the Park Board.[7] The trial court's determination was premised on its conclusion that the Town's dissolution of the Park Board was unlawful. Because the trial court's premise is incorrect, as explained in Issue One, there is no Park Board to which the Park Board Members can be reinstated. Accordingly, we reverse the trial court's reinstatement order.

---

(Ind. Ct. App. 2003) ("We will not intervene in the local legislative process as long as it is supported by some rational basis.").

[7] In particular, the Town asserts that the trial court "had no authority to reinstate" Reiling, whose term had expired on December 31, 2011, before the court's reinstatement order. Appellant's Br. at 22. Though the Town's argument is well taken, we need not decide it.

## Issue Three:  Injunction

Similarly, the Town asserts that the trial court erred when it "enjoined [the Town] from interfering in the workings" of the Park Board.  See Appellant's App. at 48.  As with Issue Two, the trial court's injunction was premised on its conclusion that the Town's dissolution of the Park Board was unlawful.  Because there is no Park Board to interfere with, we reverse the trial court's injunction against the Town.

## Issue Four:  The Law Firm

Finally, the Town argues that the trial court erred when it determined that the law firm may not represent the Park Board Members.  In their complaint, the Park Board Members alleged as follows:

> 30.    At all times relevant here, [the law firm] has represented both the Town . . . and the [Park Board].
>
> 31.    Said firm has entered an appearance for the defendant Town in this litigation.
>
> * * *
>
> 33.    Plaintiffs . . . assert their claims not only individually but as Members of the [Park Board], and for that Board.
>
> * * *
>
> 35.    Plaintiffs ask this court to determine preliminarily that the interests of the Town and the Park Board, and its members, are in conflict . . . .  As a result of that conflict, plaintiffs ask the court to [d]etermine that [the law firm] may not represent the Defendant Town . . . in any way in this matter, nor shall [the law firm] continue to represent the [Park Board] during the pendency of this dispute.

16

Id. at 71.[8] Again, in its order on partial summary judgment, the trial court determined that the law firm "may continue to represent the Town . . . in this action. However, it would be a conflict of interest for [it] to continue to represent the [Park Board] and the members of the Park Board in any matters . . . ." Id. at 48.

According to the Town, the trial court erred on this issue because the law firm "has never represented the individual plaintiffs." Appellant's Br. at 26. But the Park Board Members are plaintiffs in both their individual and official capacities, the Park Board Members are plainly representing the interests of the Park Board, and the Town does not dispute that the Park Board is a current client of the law firm. Moreover, we disagree with the Town's assertion that "there has been no showing . . . that the Town . . . and the Park Board . . . are adverse to each other . . . ." Appellant's Br. at 26. This litigation is itself conclusive evidence of the law firm's conflict.

According to Indiana Rule of Professional Conduct 1.7(a)(1), "a lawyer shall not represent a client if . . . the representation of one client will be directly adverse to another client . . . ." Hence, the undisputed evidence demonstrates that the law firm currently represents two clients whose interests are directly adverse to one another. As such, the designated evidence supports the trial court's order that the law firm may not continue to represent the Park Board in any matters. See, e.g., Reed v. Hoosier Health Sys., Inc., 825

---

[8] The Park Board Members state that the trial court "was incorrect to allow the [law] firm to continue representing the Town." Appellees' Br. at 24. To the extent the Park Board Members call into question the trial court's judgment, their statements have not been raised in the appellees' brief as a cross-appeal issue. See App. R. 9(D). Accordingly, we conclude that the Park Board Members' statements are wholly in response to the Town's appellate arguments and are not intended to challenge the trial court's judgment.

N.E.2d 408, 411 (Ind. Ct. App. 2005) (holding that the trial court did not err when it disqualified plaintiff's attorneys under Rule 1.7(a)).

**Conclusion**

The traditional rule in the law of municipal corporations strictly circumscribed municipal power. This restriction was based on the principle that there is no inherent right to local self-government, that local governments possess no inherent powers, and, thus, that local governments must depend totally upon state legislatures for every power they exercise. Under this rule, Dillon's Rule, a municipality could exercise only those powers specifically granted, necessarily implied, or indispensable to a municipal corporation. Before the Powers of Cities Act, this rule was firmly established in Indiana law. The Powers of Cities Act turned Dillon's Rule upside down. The Power of Cities Act and, later, the Home Rule Act changed the legal landscape of the relationship between the State and its political subdivisions.

Thus, the trial court erred as a matter of law when it used Dillon's Rule to determine the scope of the Town's legal authority to dissolve the Park Board and the Parks Department. The proper legal inquiry is based on Indiana's Home Rule Act. Pursuant to that Act, there is no statutory prohibition against the Town's exercise of authority to dissolve the Park Board or the Parks Department. And any doubt as to the existence of such power is resolved in favor of its existence. I.C. § 36-1-3-3. Accordingly, the Town's exercise of that authority by enacting the Ordinance was lawful.

Given the Town's authority under Indiana's Home Rule Act, we reverse the trial court's entry of summary judgment for the Park Board Members on their claims for

illegal termination, declaratory judgment on the validity of the Ordinance, and injunctive relief. On each of those claims, we remand with instructions that the trial court enter summary judgment for the Town. We affirm the trial court's order that the law firm may not continue to represent the Park Board and its members in any matters based on a current conflict of interest.

The trial court's entry of summary judgment for the Park Board Members is affirmed in part, reversed in part, and remanded with instructions for the court to enter summary judgment in favor of the Town on Counts I, II, and III of the First Amended Complaint.

FRIEDLANDER, J., and BRADFORD, J., concur.