# FOR PUBLICATION



**FILED**
Jan 12 2015, 9:28 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:
**KURT A. YOUNG**
Anderson, Wray, and Kennard
Nashville, Indiana

**WANDA E. JONES**
Jones Law Offices
Nashville, Indiana

ATTORNEYS FOR APPELLEE:
**E. PAIGE FREITAG**
Jones, McGlasson & Freitag, P.C.
Bloomington, Indiana

**WILLIAM C. LLOYD**
Lloyd Law, L.L.C.
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| DAVID ANDERSON, COMMISSIONER, | ) |
| JOE WRAY, COMMISSIONER, | ) |
| JOHN KENNARD, COMMISSIONER, | ) |
| and BOARD OF TRUSTEES, | ) |
| BROWN COUNTY FIRE | ) |
| PROTECTION DISTRICT, | ) |
| | ) |
| Appellants-Defendants | ) |
| | ) |
| v. | )  No. 07A01-1406-PL-265 |
| | ) |
| SUSANNE GAUDIN, | ) |
| JANET KRAMER, | ) |
| and RUTH REICHMANN, | ) |
| | ) |
| Appellees-Plaintiffs. | ) |

APPEAL FROM THE BROWN CIRCUIT COURT
The Honorable Kathleen Tighe Coriden, Special Judge
Cause No. 07C01-1108-PL-0364

**OPINION – FOR PUBLICATION**

**VAIDIK, Chief Judge**

## Case Summary

In 2007 the Brown County Commissioners enacted an ordinance establishing a county-wide fire-protection district. In 2011 the Commissioners amended the ordinance, reducing dramatically the scope of the ordinance and the powers granted to the Board of Trustees. County-resident freeholders first filed suit for declaratory judgment, and then the Commissioners and the freeholders filed cross motions for summary judgment, asking the trial court to determine whether the amended ordinance was a valid exercise of the Commissioners' authority. The trial court granted summary judgment in favor of the freeholders, finding that the amendment was a de facto dissolution of the ordinance, in contravention of the Fire District Act and this Court's opinion in *Gaudin v. Austin*, 921 N.E.2d 895 (Ind. Ct. App. 2010).[1] On appeal, the Commissioners contend that the amended ordinance was a valid exercise of their authority. We affirm the trial court, finding that the "amendment" made to the ordinance amounted to a de facto dissolution, and that the Commissioners did not have the authority to amend the ordinance at all.

## Facts and Procedural History

---

[1] The Indiana Supreme Court granted transfer in *Gaudin* in October 2010. Thereafter the Court issued an order stating that Chief Justice Shepard did not participate in the case, and writing in relevant part as follows: "After oral argument and further review, of the four members of this Court able to participate in this case, two Justices believe that the result reached by the trial court was correct, and two Justices are of a contrary belief." Therefore, the Supreme Court reinstated this Court's decision pursuant to Indiana Appellate Rule 58(C). *Gaudin v. Austin*, 936 N.E.2d 1241 (Ind. 2010).

In 2007 the then-governing Brown County Board of Commissioners ("the Commissioners")[2] enacted County Ordinance No. 09-04-07-01 ("the Ordinance"), which created the Brown County Fire Protection District ("BCFPD" or "the District"), a municipal corporation created to provide comprehensive fire-protection and fire-prevention services throughout Brown County. Pursuant to the Ordinance, the BCFPD included all four of the townships in Brown County—Hamblen, Jackson, Van Buren, and Washington—but excluded the town of Nashville. The Ordinance states in relevant part as follows:

> This ordinance does hereby establish a fire protection district for the following purposes:
>
> (1) Fire protection, including the capability for extinguishing all fires that might be reasonably expected because of the types of improvements, personal property, and real property within the boundaries of the district.
>
> (2) Fire prevention, including identification and elimination of all potential and actual sources of fire hazard.
>
> (3) Other purposes or functions related to fire protection and fire prevention.
>
>     (A) These purposes and functions are to effectively have jurisdiction and govern fire services throughout the District, and shall include educational initiatives and efforts within the community for fire and hazard recognition and prevention, volunteer recruitment, proper training and working conditions for the safety of volunteers, and expeditiously establishing,

---

[2] The Appellants in this matter are the Commissioners and the Board of Trustees of the Brown County Fire Protection District, but we refer to them collectively as "the Commissioners" for the sake of brevity. This suit was initially filed against the then-sitting Commissioners who had passed the Amended Ordinance. Two of those Commissioners did not seek reelection, and the current Commissioners are now the named parties. This suit also originally included as a plaintiff a person who is now deceased and is, therefore, no longer a named party. Two other entities, an existing fire protection district and a conservancy district not contiguous to the district here in issue, were subsequently added then dismissed as parties by operation of the Stipulation and Agreement, and it was further agreed that the Town of Nashville should not be included as a party.

3

implementing, supervising, and having full and proper accountability as to all applicable safety and operational standards and expectations.

(B) Responsive and best effort services, with planning and due diligence coordination, are to be provided throughout the District.

(C) The area selected for this Fire Protection District shall include all of the following: Hamblen, Jackson, Van Buren, and Washington townships . . . . and excluding only the Town of Nashville . . . .

(4) Other emergency services.

Appellant's App. p. 139-40.

The Ordinance incorporated many sections of the Fire District Act found at Indiana Code chapter 36-8-11, including the appointment of a five-member board of fire trustees, trustee's meetings, trustee's powers and duties, tax levies, and the purchase of firefighting equipment. Paragraph G(a)(1) of the Ordinance provides that the board of trustees "has the same powers and duties as a township executive . . . with respect to fire protection functions . . . ." *Id.* at 142. Paragraph G(a)(4) provides that the trustees "shall exercise general supervision of and make regulations for the administration of the district's affairs. This shall include establishing the authority and protocols for Incident Command." *Id.* And paragraph G(a)(17) authorizes trustees to "levy taxes at a uniform rate on the real and personal property within the district," subject to certain limitations and special accounting procedures and administration. *Id.* at 143.

The Ordinance has been the subject of two previous cases: *Sanders v. Board of Commissioners of Brown County*, 892 N.E.2d 1249 (Ind. Ct. App. 2008), *trans. denied,*

and *Gaudin*, 921 N.E.2d 895. In *Sanders*, several freeholders[3] filed an action against the Commissioners, requesting declaratory judgment that the Ordinance was void because the Commissioners lacked the statutory authority to create a fire-protection district. *See Sanders*, 892 N.E.2d at 1250. This Court affirmed the trial court, holding that the Commissioners did have the authority to create the district pursuant to Indiana Code section 36-8-11-4.

Thereafter, in January 2009, the Commissioners attempted to dissolve the fire district, which led to another legal challenge by county-resident freeholders. In *Gaudin*, freeholders challenged the Commissioners' attempt to dissolve the fire-protection district, and this Court reversed the trial court's grant of summary judgment for the Commissioners, holding that while the Fire District Act explicitly provides in two discrete sections for establishment of a district either by ordinance or by freeholder petition, the Act sets forth only one method of dissolution—the freeholder-petition process described in Indiana Code section 36-8-11-24—and thus the Commissioners lacked authority to unilaterally dissolve the district. *See Gaudin*, 921 N.E.2d at 897-900; *see also* Ind. Code § 36-8-11-24 ("(a) Proceedings to dissolve a fire protection district may be instituted by the filing of a petition with the county legislative body that formed the district. . . . (b) The petition must be signed: (1) by at least twenty percent (20%), with a minimum of five hundred (500), of the freeholders owning land within the district; or (2) by a majority of those freeholders owning land within the district; whichever is less.").

---

[3] "Freeholder" is defined in Indiana Code section 36-8-11-2 as "an individual who holds land in fee, for life, or for some indeterminate period of time, whether or not in joint title."

5

After *Gaudin*, in March 2011, the Commissioners amended the Ordinance. The Amended Ordinance provided in part:

> WHEREAS, in September[] 2007, the Board of Commissioners of Brown County, Indiana, adopted Ordinance Number 09-04-07-01;
>
> * * * * *
>
> WHEREAS, the Board of Commissioners has reviewed, studied and considered said Ordinance;
>
> WHEREAS, as a result of such review, study and consideration, the Board of Commissioners has concluded that parts of the area included in the district by said ordinance, particularly Hamblen Township, which has an existing fire protection district, were included in error and, as a result, the district board of trustees was improperly constituted;
>
> WHEREAS, as a result of such review, study and consideration, the Board of Commissioners has concluded that all of the purposes for which the district was established are unnecessary, because those purposes are currently being served by other more cost-effective means;
>
> * * * * *
>
> BE IT THEREFORE RESOLVED that [the Ordinance] is amended to read as follows:
>
> 1. This ordinance does hereby reaffirm the establishment of the [BCFPD] . . . includ[ing] Jackson, VanBuren and Washington townships . . . .
>
> 2. Pursuant to IC 36-8-11-4(a)(3), the sole purpose of the [BCFPD] shall be to conduct fire prevention education within the District. . . .
>
> * * * * *
>
> 19. Upon this Ordinance as amended taking effect, all provisions of the initial pre-amendment Brown County Ordinance Number 09-04-07-01 are of no force and effect.

Appellant's App. p. 148, 155.

6

Thus, the Amended Ordinance dramatically reduced the overall purpose(s) of the District: from providing fire-protection and fire-prevention services to providing nothing more than "fire[-]prevention *education* within the District." *Id.* at 155 (emphasis added). The Amended Ordinance also changed the composition of the board of trustees from five members—including a Hamblen Township representative and an "at large" member—to three members representing the three townships "actually served by the District" and outlined a procedure for appointing the new three-person board. *Id.* at 149. Moreover, the Amended Ordinance removed the special accounting procedures, restricted the District to levying taxes on only real property (and not personal property, as permitted in the Ordinance), and provided that "[t]he District shall seek funding through non-tax sources, such as grants and donations, to fund its activities so as to minimize or eliminate any tax impact on Brown County property owners." *Id.*

In August 2011 Brown County residents and property owners ("the Freeholders") filed a suit for declaratory judgment against the Commissioners and the Board of Trustees, seeking to set aside the amendment to the Ordinance. After mediation in September 2013, the parties agreed upon a stipulated question to be resolved by cross-motions for summary judgment presented to the trial court: "Is the amended ordinance 09-04-07-01, a valid exercise of the authority of the Brown County Commissioners?" *Id.* at 37. In March 2014 the trial court granted summary judgment in favor of the Freeholders. The trial court's order provided in relevant part:

A. A history of events leading to the narrow issue before the court is helpful:

\* \* \* \* \*

7

3. Th[e *Sanders*, 915 N.E.2d 978] decision led opponents of the Fire District to run for office and, once elected, the majority of the [C]ommissioners voted to dissolve the Fire District. This action was challenged by other Brown County freeholders with the trial court ruling the [C]ommissioners were acting within their authority in dissolving the Fire District. However, the Court of Appeals concluded the [C]ommissioners' action was void as being contrary to the statute [Indiana Code section 36-8-11-24] . . . . *See Gaudin* [], 921 N.E.2d 895 . . . . The result was the Fire District remained as established by the 2007 ordinance.

4. Having been thwarted in their efforts to dissolve the Fire District the Commissioners then embarked upon a course of action to essentially "gut" the Fire District of its powers by passage of an amendment on March 3, 2011 . . . .

\* \* \* \* \*

L. The court finds the Commissioners['] unilateral actions in gutting the Fire District ordinance, except for the sole purpose of conducting "fire prevention education within the District" was an obvious "end-run" around the *Gaudin* ruling to obtain the result the Commissioners intended without determining the wishes of the freeholders within their district.

M. Any Brown County freeholder has the right, per statute, to institute a petition to dissolve the Fire District. This procedure is available to the [C]ommissioners as well. Just as the Commissioners are not permitted to dissolve the Fire District except as set forth by statute neither are they permitted to exercise authority, once that authority has been granted to another entity, here the Fire District. . . .

*Id*. at 7-10 (formatting altered).

The Commissioners now appeal the trial court's order.

**Discussion and Decision**

When we review the grant or denial of summary judgment, we use the same standard as the trial court. *Gaudin*, 921 N.E.2d at 896. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment

8

as a matter of law. *Id.* Where the issue presented on appeal is a pure question of law, we review the matter de novo. *Id.* The interpretation of a statute presents a pure question of law for which summary judgment is particularly appropriate. *Id.*

The goal of statutory construction is to determine, give effect to, and implement the intent of the General Assembly. *Id.* We presume the legislature intended the language used in a statute to be applied logically and not to bring about an unjust or absurd result. *Id.* Statutes relating to the same general subject matter are *in pari materia* and should be construed together so as to produce a harmonious statutory scheme. *Id.* To determine legislative intent, we read the sections of an act together so that no part is rendered meaningless if it can be harmonized with the remainder of the statute. *Id.* If two statutes or two sets of statutes appear inconsistent in some respects, but can be rationalized to give effect to both, then we are obliged to do so. *Id.* at 896-97.

On appeal, the Commissioners argue that the amendment of the Ordinance is permitted under Indiana's Home Rule Act, set forth in Indiana Code chapter 36-1-3. According to Section 36-1-3-1, Home Rule applies to all "units," and "unit" means county, municipality, or township. *See* Ind. Code § 36-1-3-1, Ind. Code § 36-1-2-23. Thus, Home Rule applies to the Commissioners. Section 36-1-3-3 provides:

> (a) The rule of law that any doubt as to the existence of a power of a unit shall be resolved against its existence is abrogated.

> (b) *Any doubt as to the existence of a power of a unit shall be resolved in favor of its existence. . . .*

Ind. Code § 36-1-3-3 (emphasis added). But there are limitations to this power: Section 36-1-3-5(a)(2) provides: "[A] unit may exercise any power it has to the extent that the

9

power . . . is not expressly granted to another entity. . . ." And according to Section 36-1-3-8(a)(3): "[A] unit does not have . . . [t]he power to impose duties on another political subdivision, except as expressly granted by statute."

Fire Protection Districts are governed by Indiana Code chapter 36-8-11 ("the Fire District Act" or "the Act"). A fire-protection district is a "municipal corporation" and therefore a "political subdivision." Ind. Code § 36-1-2-10, Ind. Code § 36-1-2-13 ("'Political subdivision' means municipal corporation or special taxing district.") & Ind. Code § 36-8-11-16. The Fire District Act provides two different means of *establishing* a fire-protection district: by ordinance—as was done in this case—or by freeholder petition. Ind. Code §§ 36-8-11-4, -5; *see also Sanders*, 892 N.E.2d at 1254. However, the Fire District Act provides only one method for *dissolution*, outlined in Indiana Code section 36-8-11-24:

> (a) Proceedings to dissolve a fire protection district may be instituted by the filing of a petition with the county legislative body that formed the district. . . .
> (b) The petition must be signed:
>
>> (1) by at least twenty percent (20%), with a minimum of five hundred (500), of the freeholders owning land within the district; or
>>
>> (2) by a majority of those freeholders owning land within the district; whichever is less.

Ind. Code § 36-8-11-24.

Returning now to the Commissioners' amendment to the Ordinance, we observe that as a general matter, the Amended Ordinance eliminated virtually every purpose for which the Ordinance was originally created, stating in the preamble: "the Board of

10

Commissioners has concluded that all of the purposes for which the district was established are unnecessary . . . ." Appellant's App. p. 148. Whereas the Ordinance was created for the broad purposes of fire protection and prevention, conferring on the Board of Trustees the "same powers and duties as a township executive . . . with respect to fire protection functions . . . .," *id.* at 142, and permitting the Trustees to "exercise general supervision of and make regulations for the administration of the district's affairs[,]" *id.*, the Amended Ordinance provided that "the sole purpose of the District shall be to conduct fire prevention *education* within the District." *Id.* at 148 (emphasis added). The Amended Ordinance also provided that "[t]he District shall seek funding through non-tax sources, such as grants and donations, to fund its activities so as to minimize or eliminate any tax impact on Brown County property owners." *Id.* at 149. In other words, we agree with the trial court's characterization of the Commissioners' treatment of the Ordinance: they "gut[ted]" it. *Id.* at 10. Thus, the inescapable conclusion is that the "amendment" the Commissioners made to the Ordinance was so extreme and far-reaching as to amount to a de facto dissolution of the Ordinance, in contravention of both Section 36-8-11-24 and *Gaudin*, 921 N.E.2d 895.[4]

Having determined that the Amended Ordinance was not a valid exercise of the authority of the Commissioners because it amounted to a de facto dissolution, we now address the question of whether the Commissioners had the authority to amend the Ordinance at all. Because there is no mention in the Fire District Act of any procedure for amending an ordinance establishing a fire-protection district, the Commissioners argue that

---

[4] We note that the Commissioners are not challenging and have not asked us to reconsider this Court's holding in *Gaudin*, 921 N.E.2d 895.

11

Home Rule supports their position.  *See* Appellant's Br. p. 13.  In particular, they assert that "[a]ny doubt as to the existence of [the] power of [the County to amend the Fire District Ordinance] shall be resolved in favor of its existence."  *See id.* at 15 (citing I.C. § 36-1-3-3(b), which actually provides: "[A]ny doubt as to the existence of a power of a unit shall be resolved in favor of its existence.").  They also cite Section 36-1-3-4(b)(2), which provides: "A unit has . . . all other powers necessary or desirable in the conduct of its affairs, even though not granted by statute."  And they put forth Section 36-1-3-5(a)(2), which provides: "a unit may exercise any power it has to the extent that the power . . . is not expressly granted to another entity."

But as to that last statute, the Freeholders argue that the Commissioners *did* grant the power to another entity: once the Commissioners established the District, it became a "separate and independent entity"; therefore, the Freeholders' argument continues, "the Commissioners' authority over the District ceased upon its establishment, except to the extent that the Fire District Act allows."  Appellee's Br. p. 9, 10 ("[B]y establishing the district, which then became a separate entity, the Commissioners necessarily and expressly granted to the Board of Trustees all of the powers and authority enumerated in the original ordinance.").

The trial court agreed.  In granting summary judgment in favor of the Freeholders, the trial court wrote: "By passage of the 2007 ordinance establishing the Fire District the Commissioners granted the authority to the Fire District to undertake the statutory purposes outlined in both the Indiana Statute and the ordinance itself."  Appellant's App. p. 9.  Accordingly, once the Commissioners—as a "unit"—granted this authority to the District,

12

they "relinquished the power to exercise control over those functions set forth in the Ordinance." *Id.*; *see also* I.C. § 36-1-3-5(a)(2) ("[A] unit may exercise any power it has to the extent that the power . . . is not expressly granted to another entity."). As stated in the trial court's order: "Nothing within Indiana Code [chapter] 36-8-11 suggests the 'unit' retains any authority over the Fire District, once established." Appellant's App. p. 9. We agree.[5]

---

[5] The Commissioners also submit *Town of Cedar Lake v. Alessia*, 985 N.E.2d 55 (Ind. Ct. App. 2013), *reh'g denied*, arguing that the fundamental proposition of that case—"Under Indiana's Home Rule Act, unless an act is prohibited it is allowed."—supports their position that "because amendment of the [O]rdinance in this case . . . is not prohibited, it is allowed." Appellant's Reply Br. p. 7. In *Alessia*, the Town Council terminated the Park Board Members' positions on the Park Board and voted in new members. *Alessia*, 985 N.E.2d at 57. After the Park Board Members filed a complaint against the Town Council, the Town Council reinstated their positions but then adopted an ordinance repealing the provisions of the Town Code establishing the Park Board and replacing them with provisions granting the Town Council "full authority and responsibility to establish, aid, maintain and operate all public and park-owned park, playground, recreational facilities, programs and properties[.]" *Id.* at 58. Both parties filed motions for summary judgment, and the trial court granted partial summary judgment in favor of the Park Board, finding that the Town Council had illegally terminated the Park Board Members' employment and the Park Board Members should be reinstated, and that the ordinance was improper and beyond the scope of the Town Council. *Id.*

On appeal, this Court reversed on these issues, finding that the trial court had erroneously relied on Dillon's Rule, which provided that "a municipality could exercise only those powers specifically granted, necessarily implied, or indispensable to a municipal corporation." *See id.* at 66. In support of their contention that the Town Council exceeded its legal authority in enacting the ordinance, the Park Board Members had argued that the Indiana Code did not give the Town Council explicit authorization to do so. *Id.* at 61. But the proper legal inquiry, this Court wrote, is based on Indiana's Home Rule Act, which provides that "unless an act is prohibited it is allowed." *Id.*

*Alessia* is factually distinguishable in at least two important ways. First, in *Alessia* this Court wrote that "conspicuously absent from [the parks-and-recreations statutes] is any restriction on a municipal corporation's authority to dissolve a park board and parks department." *Id.* at 62. But in the case before us, the Fire District Act *does* explicitly restrict the Commissioners' ability to dissolve the District. *See* I.C. § 36-8-11-24; *see also Gaudin*, 921 N.E.2d at 899-900.

And second, the Park Board Members asserted that the Town Council had violated Indiana Code section 36-1-3-8, which provides, "[A] unit does not have . . . the power to impose duties on another political subdivision, except as expressly granted by statute." I.C. § 36-1-3-8(a)(3). This Court rejected that argument, writing: "The dissolution of the Park Board and the Parks Department is not equivalent to giving obligatory tasks or functions to them, which is what [that statute] prohibits." *Alessia*, 985 N.E.2d at 62. In this case, the Commissioners argue that they are "expressly granted by statute the power to assign any or all of the purposes listed in Ind[iana] Code [section] 36-8-11-4 to the Fire District." Appellant's Reply Br. p. 7-8. But what Section 36-8-11-4 actually says is that the Commissioners may *establish* fire protection

13

We find that in creating the District, which then became a separate entity (or political subdivision) with the Trustees at the helm, the Commissioners did expressly grant to the District and the Trustees the powers and authority enumerated in the Ordinance. *See* I.C. § 36-1-3-5(a)(2); *see also* Appellee's Br. p. 10. They therefore relinquished the power to amend the Ordinance.[6] Accordingly, we affirm the trial court.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.

---

districts for any of the listed purposes—not that they are statutorily authorized to amend the Ordinance whenever they want. *See* I.C. § 36-8-11-4.

[6] In light of our finding that the Commissioners lacked authority to amend the Ordinance, we decline to authorize them to do so now, despite their claim that they would correct several elements of the Ordinance that, as it stands, violate state or constitutional law. We also find that the Freeholders did not waive their right to challenge the Commissioners' authority to amend the Ordinance by failing to do so at the time the Ordinance was enacted, as the Commissioners assert. In support of this argument, the Commissioners point to several aspects of the Ordinance that allow for future changes: the language related to the inclusion of Hamblen District, the possible future compensation of trustees, and the possible increase of the tax rate within the district. *See* Appellant's Br. p. 27. However, the inclusion of this language within the Ordinance did not give rise to an actual controversy. As stated by the Freeholders, "The Apellants [sic] are essentially taking the position that Appellees should have filed suit alleging no future amendments were proper when no amendment had yet occurred, likely rendering any such case moot." Appellee's Br. p. 20 (citation omitted).