ATTORNEYS FOR APPELLANT
TOWN OF ZIONSVILLE
Nicholas K. Kile
Mark J. Crandley
Barnes & Thornburg LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
TOWN OF WHITESTOWN AND
ANGEL BADILLO
Stephen C. Unger
Paul D. Vink
Bradley M. Dick
Bose, McKinney & Evans, LLP
Indianapolis, Indiana

ATTORNEYS FOR
AMICI CURIAE, THE CITIES
OF BATESVILLE AND
BOONVILLE, AND THE
TOWNS OF CHANDLER,
DANVILLE, FORTVILLE,
NORTH MANCHESTER,
PENDLETON, AND
PLAINFIELD

Melvin R. Daniel
Raegan M. Gibson
Stephanie V. McGowan,
Benesch, Friedlander,
Coplan & Aronoff, LLP
Indianapolis, Indiana

Stephen J. Peters
Plunkett Cooney, P.C.
Indianapolis, Indiana

_____

# In the
# Indiana Supreme Court

_____

## No. 06S01-1601-PL-36

TOWN OF ZIONSVILLE, INDIANA,                                 *Appellant (Defendant)*,

v.

TOWN OF WHITESTOWN, INDIANA, AND
ANGEL BADILLO,                                                      *Appellees (Plaintiffs)*.

_____

Appeal from the Boone Superior Court, No. 06D02-1406-PL-64
The Honorable Rebecca M. McClure, Judge

_____

On Transfer from the Indiana Court of Appeals, No. 06A01-1410-PL-432

_____

January 22, 2016

**Dickson, Justice**.

Today we undertake to resolve various disputes between governmental entities in Boone County, Indiana, arising under the Indiana Government Modernization Act ("GMA"), Indiana Code Section 36-1.5-1-1 *et seq*. We reverse both the trial court's rejection of the GMA reorganization of Zionsville and Perry Township and its approval of Whitestown's attempts to annex territory included in the 2014 Zionsville-Perry reorganization plan and territory included in Zionsville's previous 2010 reorganization.

This appeal arises from a declaratory judgment action by the Town of Whitestown, Indiana, and Angel Badillo, a resident of Perry Township (collectively "Whitestown"), seeking judicial declarations (a) that the Zionsville and Perry Township reorganization is contrary to law; (b) that if not unlawful, it requires a specific separate approval by each participating township and municipality; and (c) that the Town of Whitestown may initiate and/or proceed with certain annexations. The Town of Zionsville counter-claimed seeking declaratory judgment in its favor on the same issues and also asserting a breach of an interlocal agreement between the two towns.

Acting under the GMA in 2010, the Town of Zionsville reorganized with the unincorporated areas of Eagle Township and all of Union Township ("2010 Reorganization"). This reorganization resulted in a new political subdivision, described in the 2010 Reorganization documents as "one governmental entity to be known as the Town of Zionsville . . . ." Appellant's App'x at 0294. The 2010 Reorganization did not include the nearby Town of Whitestown, which before the reorganization was geographically located in parts of Worth, Perry, and Eagle Townships in Boone County, Indiana.

On March 26, 2013, the Town Council of Whitestown adopted Ordinance 2012-22 (2012 Southside Annexation, introduced November 13, 2012) to annex certain territory in Perry Township that included a Whitestown wastewater treatment plant. The landowners filed a remonstrance, and the case is currently pending transfer to this Court in Cause No. 29A05-1409-

2

MI-00437.[1]

On April 18, 2014, the Perry Township Advisory Board and the Perry Township Trustee adopted a resolution (No. 2014-01) proposing to reorganize with Zionsville. On April 21, 2014, the Zionsville Town Council adopted a resolution (No. 2014-10) to participate in a proposed reorganization with Perry Township. The proposed reorganization between Zionsville and Perry Township ("2014 Zionsville-Perry Reorganization") did not include Whitestown. On April 22, 2014, at a meeting of the Whitestown Town Council, four annexation ordinances (Ordinances 2014-12, 2014-13, 2014-14, and 2014-15) were introduced proposing the annexation of certain territory included in the proposed reorganization between Zionsville and Perry Township and territory already within Zionsville.  The Zionsville-Perry Reorganization plan was finally adopted by Zionsville and Perry Township on May 20, 2014, and was to be submitted to the voters in the two reorganizing political subdivisions in the general election of November 4, 2014.

On June 25, 2014, Whitestown filed a complaint against Zionsville seeking a judgment declaring the 2014 Zionsville-Perry Reorganization invalid.  Zionsville filed a counterclaim seeking a judicial declaration prohibiting Whitestown from pursuing its attempts to annex territory (a) in Perry Township because the 2014 Zionsville-Perry Reorganization was first-in-time, and (b) in Zionsville because Whitestown cannot annex territory within Zionsville's corporate limits.

On cross-motions for summary judgment, the trial court entered summary judgment for Whitestown on October 7, 2014. The trial court concluded that: (1) the 2014 Zionsville-Perry Reorganization is contrary to the GMA and therefore invalid; (2) the 2014 Zionsville-Perry Reorganization's proposal for a public vote on the 2014 Plan does not comply with the GMA; (3) Whitestown has authority to pursue the annexations, and (4) the Town of Whitestown did not breach the interlocal agreement with the Town of Zionsville.   The reorganization plan was nevertheless to be submitted at the November 4, 2014 general election to the voters of the political subdivisions participating in the reorganization.

---

[1] Whitestown's 2013 Southside Annexation is not among the annexations challenged in this appeal.

Zionsville initiated this appeal, claiming (a) that it possesses township powers from the predecessor townships of Eagle and Union Townships in the 2010 Reorganization, and thus has the power of a township to merge with Perry Township under the GMA; (b) alternatively, that if Zionsville could not reorganize with Perry Township as a township itself, then it could reorganize with Perry Township as a town; (c) that Whitestown as a municipality cannot annex territory within Zionsville, a neighboring municipality; (d) that Whitestown cannot annex territory in Perry Township after the reorganization was initiated; and (e) that the trial court erred in striking down a reorganization between Zionsville and Perry Township "despite the fact that their elected officials and voters both approved the reorganization." Appellant's Br. at 1.

Whitestown responded to Zionsville's appellate claims, asserting: (a) that the GMA does not permit Zionsville to reorganize with Perry Township because Zionsville "is separated from Perry Township by Whitestown," and thus is not adjacent to Perry Township, Appellee's Br. at 1; (b) that the voting blocs Zionsville directed in its 2014 reorganization plan do not comply with the GMA's requirements; and (c) that Zionsville cannot use the GMA to block Whitestown from completing first-in-time annexations in Perry Township or in areas where Zionsville purports to act as a township but in which Whitestown provides municipal services. Whitestown asks this Court to affirm the trial court's order, which concluded that Zionsville may not reorganize with Perry Township as "[t]he Perry Plan's voting districts are not consistent with the requirements of the [GMA]," and "Whitestown may proceed with its earlier initiated annexations. . . ." Appellant's App'x at 26, 31.

The Court of Appeals reversed the trial court. Town of Zionsville v. Town of Whitestown, 33 N.E.3d 1144, 1155 (Ind. Ct. App. 2015). Whitestown sought transfer. Numerous Indiana cities and towns have filed briefs as amicus curiae.[2] We granted transfer.

_____

[2] Amici are "concerned by the potential impact" of the Court of Appeals' decision in this case and "are sensitive to the notion that reorganizations may be used to encircle or leap them in a manner that is detrimental to good community growth and economic development" by allowing noncontiguous reorganizations in "bizarre and inefficient ways," by allowing "hybrid" entities to exist and reorganize without limits creating a public policy nightmare undermining the purpose of the GMA, and by turning the GMA into an unintended "land-grab statute." Br. of Amici Curiae Batesville, Boonville, Chandler, Danville, Fortville, North Manchester, Pendleton, Plainfield at 1, 3-4.

The principal issue in this appeal is the correctness of the trial court's ruling on the parties' competing summary judgment motions on the same issues. The parties disagree regarding issues of statutory construction and application, but the relevant facts are not in dispute. Because this appeal presents only issues of law, our review is *de novo*. *See* Cavens v. Zaberdac, 849 N.E.2d 526, 529 (Ind. 2006).

Consolidating the parties' claims, this appeal presents the following principal issues: (1) Did the 2010 Reorganization of Zionsville with Union and Eagle Townships empower Zionsville to subsequently reorganize with Perry Township? (2) Was the 2014 Zionsville-Perry Reorganization structurally defective? (3) Was Whitestown entitled to annex territory included in the proposed 2014 Zionsville-Perry Reorganization or in Zionsville's completed 2010 Reorganization?

### 1. Nature and Power of Zionsville after the 2010 Reorganization

In 2010 several Boone County government entities reorganized under the GMA. The reorganization included the "unincorporated portions of Eagle Township, all of Union Township, and the current Town of Zionsville . . . ." Appellant's App'x at 0056. The 2010 Reorganization excluded the incorporated portion of Eagle Township consisting of portions of the Town of Whitestown. The reorganization explicitly stated that the resulting governmental entity "known as the Town of Zionsville," *id.*, "shall be governed and administered as a 'town' as that term is defined under Indiana law." *Id.* at 0058. In this appeal the parties dispute whether the resulting reorganized Zionsville was thereafter empowered to further reorganize with other townships under the GMA.

We must determine whether Zionsville, as a new political subdivision that identifies itself as a town and claims township powers, is authorized to further reorganize with another township under the GMA. The Indiana General Assembly enacted the GMA in 2006 expressly designating among its purposes to: "[g]rant broad powers to enable political subdivisions to operate more

5

efficiently by eliminating restrictions under existing law that: (A) impede the economy of operation of; (B) interfere with the ease of administration of; (C) inhibit cooperation among; and (D) thwart better government by; political subdivisions." Ind. Code § 36-1.5-1-1(1) (2006).[3] Under the GMA, eleven various sets of political subdivisions are authorized to reorganize, including:

> (2) Two (2) or more townships located entirely within the same county. A township reorganizing under this subdivision must be adjacent to at least one (1) other township participating in the reorganization.
> * * *
> (7) A township and a municipality that is located in any part of the same township.

Ind. Code § 36-1.5-4-1(a). In prescribing the powers of a resulting governmental entity, the Act expressly declared:

> A reorganized political subdivision has the powers granted by statute to a political subdivision of the same type as the reorganized political subdivision. However, if authorized by the plan of reorganization approved by the voters in a public question under this chapter, the reorganized political subdivision will exercise a power or have the officers or number of offices that a statute would have permitted any of the reorganizing political subdivisions to have.

Ind. Code § 36-1.5-4-38. An expansive application of the GMA is expressly directed:

"[T]o the extent the provisions of this article are inconsistent with the provisions of any other general, special, or local law, the provisions of this article are controlling, and compliance with this article shall be treated as compliance with the conflicting law." Ind. Code § 36-1.5-1-6.[4] The GMA instructs that its provisions must be "liberally construed to effect [its] purposes . . . ." Ind. Code § 36-1.5-1-5.

In 2012 this Court extensively reviewed the nature and effect of the GMA, finding that it

---

[3] The General Assembly passed the GMA in 2006 and amended it in 2013 and 2014. Citations in this opinion will be to the 2006 GMA except as noted.

[4] Effective July 1, 2013, the following sentence was added to the end of this provision: "However, after the reorganization, the reorganized political subdivision may exercise any power described in IC 36-1.5-4-38." On the same date, the GMA was further clarified to specify that "the reorganized political subdivision retains the powers of a township after the reorganization in order to provide township services . . . ." Ind. Code § 36-1.5-4-40.5(2)(B) (2013). These amendments, however, were not in effect at the time of Zionsville's 2010 Reorganization with Eagle and Union Townships and thus have no bearing on Zionsville's 2010 Reorganization.

6

was enacted in 2006 to liberalize "the framework within which local governments may reorganize themselves." Kole v. Faultless, 963 N.E.2d 493, 494 (Ind. 2012). The GMA framework "substantially reduces the barriers to rearranging local units" *id*, and granted political subdivisions "'full and complete authority' to reorganize, exercise governmental functions under a cooperative agreement, and transfer responsibilities between offices and officers." *Id* at 496. Under the GMA, "[a] reorganization includes a change in the structure or administration of a political subdivision . . . ." *Id*. We emphasized in Kole that, regardless of the political subdivisions involved in a reorganization, the GMA "does not, at least by its terms, limit the resulting forms the reorganized political subdivision may take." *Id*. at 497. Kole further explained that, because the GMA specifically directs that it be liberally construed and fully authorizes the reorganization of political subdivisions, "nontraditional" political subdivisions may emerge after reorganization. *See* Kole, 963 N.E.2d at 495 (approving a new political subdivision, the City of Fishers, which "would become a 'nontraditional' second class city that combined attributes of a second class city and a town").

The 2010 Reorganization plan expressly directed that Zionsville, as the resulting entity, was to be governed and administered as a town under Indiana law. Thus it had the powers granted by statute to a town. Ind. Code § 36-1.5-4-38(a). In addition to these powers the GMA authorized a reorganized political subdivision to "exercise a power . . . that a statute would have permitted any of the organizing political subdivisions to have" but only "if authorized by the plan of reorganization approved by the voters in a public question under this chapter . . . ." *Id*. The 2010 Reorganization plan specified that the powers of the resulting Town of Zionsville[5] would include the "powers, rights, and duties" of Eagle and Union Townships as follows:

> Township Duties Transferred. As of the Effective Date, the offices described in Ind. Code § 36-6 *et. seq*., including, but not limited to, the township trustee and the township board, shall cease to exist and are abolished, and *the powers, rights, and duties described in Ind. Code § 36-6* et. seq. *shall be transferred* in the manner set forth herein or as determined by the New Town Council.

Joint Resolution No. 2008-02 of the Eagle Township Board, Joint Resolution No. 2008-01 of the Union Township Board, Ordinance No. 2008-12 of the Town of Zionsville, Indiana, 6-7

---

[5] Under the GMA, the "participating political subdivisions [are able to consolidate] into one (1) of the participating political subdivisions." Ind. Code § 36-1.5-4-3(2).

(Appellant's App'x at 0060) (emphasis added). Whitestown does not dispute the adoption of this joint resolution nor the approval of the 2010 Reorganization by a majority of the voters.

As noted above, the GMA provision authorizing a reorganized government entity to exercise the powers of the organizing entities is qualified by the phrase "if authorized by the plan of reorganization . . . ." Ind. Code § 36-1.5-4-38. Whitestown argues that under the language of the 2010 Reorganization plan the powers transferred to Zionsville included only "the powers, rights, and duties described in Ind. Code *§ 36-6* et seq." Appellee's Br. at 21 (quoting Appellant's App'x at 0298) (emphasis in original). The provisions of Title 36, Article 6 (Government of Townships) do not include the specific power to reorganize as a township found in the GMA at Title 36, Article 1.5 (Government Modernization). Significantly, however, the GMA directs its own expansive and controlling application:

> A political subdivision may exercise the powers granted under this article to reorganize or enter into cooperative agreements without complying with the provisions of any other law, statute, or rule.

Ind. Code § 36-1.5-1-4. The Act further states: "This article shall be liberally construed to effect the purposes of this article." Ind. Code § 36-1.5-1-5. Similarly:

> Except as otherwise specifically provided by law, to the extent the provisions of this article are inconsistent with the provisions of any other general, special, or local law, the provisions of this article are controlling, and compliance with this article shall be treated as compliance with the conflicting law.

Ind. Code § 36-1.5-1-6. As explained in Kole, the GMA granted political subdivisions "'full and complete authority'" to reorganize and exercise governmental functions. 963 N.E.2d at 496 (citing Ind. Code § 36-1.5-1-2). In Kole, this Court also reviewed Indiana's history relating to the powers local government had as being limited to only those powers specifically listed, and how the General Assembly has been actively moving away from that limitation since the 1970's and into the Twenty-First Century. *Id*. at 496. We observed:

> [I]t is far less burdensome on both the courts and the Legislature for the law to presume the existence of local authority to act absent some express prohibition, than it is to require legislation spelling out every detail of every permissible action a municipality may take. So the General Assembly has said, several times over multiple recent decades.

Kole, 963 N.E.2d at 498. In light of these considerations, we decline to restrictively interpret the GMA's application to the 2010 Reorganization plan so as to limit Zionsville's exercise of general township powers, including the power to further reorganize pursuant to the GMA.

8

We acknowledge the vigorous arguments of Whitestown cautioning against potential challenges related to traditional concepts of governance and the allocation and assumption of township services, particularly with respect to the Whitestown residents located in the former Eagle Township. Issues of effective municipal governance are policy matters to be determined by legislative formulation, not by judicial intrusion. We conclude that the legislature, in crafting the GMA, envisioned and authorized reorganized political entities to assume all of the functions and to exercise all of the powers of the entities participating in the reorganization. This understanding is enhanced by the legislature's later declaration that "a reorganized political subdivision that results from a reorganization under this chapter must continue to carry out the duties imposed by Indiana law on the reorganizing political subdivisions that combined to form the reorganized political subdivision." Ind. Code § 36-1.5-4-39(b) (2013).

Whitestown also argues that the GMA "permits two adjacent 'townships' to reorganize together," but "does not permit a *township* and a *town with some township powers* to do so." Appellee's Br. at 20 (citing Ind. Code § 36-1.5-4-1(a)(2)) (emphasis in original). This is because, Whitestown argues, "the Legislature did not say that a municipality with 'substantially equivalent powers' to a township could reorganize as if it were a township." *Id.* at 20 n.4. We reject this argument because the ability to reorganize under section 36-1.5-4-1(a)(2) is itself a township power–specifically the power to "reorganize under this chapter." Ind. Code § 36-1.5-4-1(a). As explained above, the GMA expressly authorizes a reorganized political subdivision to "exercise a power . . . that a statute would have permitted any of the reorganizing political subdivisions to have." Ind. Code § 36-1.5-4-38.

The fact that the reorganized Town of Zionsville included all of Eagle Township except portions within the municipal boundaries of Whitestown does not preclude the transfer to Zionsville of all of the township powers of the former Eagle Township. Whitestown concedes that "[n]o one disputes that Zionsville is required to provide township services in all of the former Eagle Township and that [it] possesses the power to do so." Appellee's Br. at 23. We find that the GMA authorized the transfer of all township powers from Eagle and Union Townships to the resulting 2010 reorganized Zionsville. We conclude that the township powers

of Eagle and Union Townships, including the power to reorganize with another township under the GMA, were transferred to the reorganized Town of Zionsville as a result of the 2010 Reorganization, enabling Zionsville to seek further government reorganization under the GMA.

## 2. The 2014 Zionsville-Perry Reorganization

*a. Zionsville, Perry Township, and the "Must Be Adjacent" Requirement*

The GMA provides that, in order for two townships to reorganize into one political entity, they "must be adjacent." Ind. Code § 36-1.5-4-1(a)(2). The GMA further explains this requirement: "[T]wo (2) political subdivisions may not be treated as adjacent if the political subdivisions are connected by a strip of land that is less than one hundred fifty (150) feet wide." Ind. Code § 36-1.5-4-2.

Prior to its 2010 Reorganization Zionsville was entirely located within Eagle Township. In 2010, however, it reorganized to include all the unincorporated areas of Eagle and Union Townships. The only area within the two Townships excluded from this reorganization was part of the Town of Whitestown within Eagle Township, which was the only incorporated area in such townships (besides the Town of Zionsville). Before the 2010 Reorganization, a portion of the Town of Whitestown was located between Zionsville and Perry Township. While the municipal limits of Whitestown included land along a significant portion of the west border of Eagle Township, Whitestown did not include a small rectangular parcel at the southwest corner of the former Eagle Township that, for a distance of over 1300 feet, shared a common boundary with Perry Township. While a portion of Whitestown separated this small parcel from the rest of Zionsville, the parcel was itself an unincorporated part of the former Eagle Township and thus under the 2010 Zionsville reorganization became a part of the resulting reorganized Town of Zionsville. This small parcel is the only territory included in the 2010 Reorganization that is adjacent to Perry Township, and it serves as the basis for the reorganized Town of Zionsville's claim that it satisfies the GMA requirement that reorganizing townships must be adjacent.[6] The following graphic prepared by the Court depicts the location of the small parcel in relation to the

---

[6] For summary judgment purposes, we find the existence of this parcel to be an undisputed fact.

10

boundaries of Perry Township, Whitestown, and the main body of Zionsville.



Simplified depiction as of April 1, 2014.

     While we do not find a separate legal description for the parcel in the record, the maps accompanying the 2010 Reorganization identified it as part of the rural, unincorporated territory of Eagle Township included in the reorganization. In 2014 Whitestown sought to annex a specifically identified seventy acre area, which included this small parcel of formerly unincorporated Eagle Township now a part of Zionsville.  Whitestown thereby implicitly acknowledged that this sub-parcel was not already a part of Whitestown and identified it as located in the former Eagle Township.   This former Eagle Township parcel coincides with the parcel of unincorporated Eagle Township territory included in the 2010 Reorganization plan. From the legal description of the seventy acres sought to be annexed by Whitestown, it is clear that the small parcel of reorganized Zionsville was adjacent to Perry Township for a distance of at least 1300 feet.

     Whitestown, however, urges that governmental reorganization under the GMA should not be applied to permit a municipality to be comprised of separated parcels, emphasizing that the 2014 Zionsville-Perry Reorganization would result in Zionsville being divided into two geographical territories separated by a portion of Whitestown.  While not disputing that the small parcel adjoins Perry Township for more than 150 feet, Whitestown argues that the parcel "is not

11

contiguous with the remainder of [reorganized] Zionsville and may not form a basis for establishing adjacency" because it is separated by Whitestown. Appellee's Br. at 29. Whitestown contends that permitting Zionsville to reorganize with Perry Township based on their common border for more than 150 feet allows Zionsville, or any other municipality, to use a previously acquired "small, isolated, island of land" as a "springboard to extend its municipal boundaries to an area entirely separated" from the rest of its territory by another municipality. Appellee's Br. at 30. Whitestown urges that the GMA adjacency requirement should be interpreted to prohibit "leap-frogging," Appellee's Pet. to Tr. at 12, which is contrary to the "idea of a municipal corporation . . . [] that of oneness, community, locality, vicinity; a collective body of inhabitants—that is, a body of people collected or *gathered together in one mass, not separated into distinct masses* . . ." Appellee's Br. at 30 (quoting Town of Dyer v. Town of St. John, 919 N.E.2d 1196, 1202 (Ind. Ct. App. 2010)) (emphasis added by Appellee); *see also* Amici Batesville's Br. at 7. From its statutory language, however, the GMA clearly permits the reorganization of political subdivisions that are "adjacent" in the sense that they are "connected by a strip of land that is [not] less than one hundred fifty (150) feet wide." Ind. Code § 36-1.5-4-2. The GMA does not mandate that a reorganized political subdivision be wholly interconnected without physical separation. Because the parcel in the southwest corner of reorganized Zionsville provides over 150 feet of adjacency to Perry Township, the GMA's adjacency requirement is satisfied.

In its reply brief in support of petition to transfer, Whitestown also asks us to import a requirement that certain annexed territory be "contiguous" under Indiana Code § 36-4-3-1.5. Because this issue was raised for the first time in two cursory sentences in Whitestown's reply brief to petition to transfer, we deem it waived. State v. Holtsclaw, 977 N.E.2d 348, 350-51 (Ind. 2012) (citing Ind. App. R. 48(A)(8)(a)); Ind. App. R. 57(G). Notwithstanding waiver, however, we disapprove the argument. In this claim, Whitestown argues that the GMA in sections 36-1.5-4-37 and 36-1.5-4-39 imports from the statutory provisions governing annexation the requirement that a territory being annexed be "contiguous," that is, "at least one-eighth (1/8) of the aggregate external boundaries of the territory" being annexed must "coincide[] with the boundaries of the annexing municipality." Ind. Code § 36-4-3-1.5 (1981). Those GMA sections, however, do not apply here. Whitestown's rights are not affected by either the 2014 Zionsville-

12

Perry Reorganization or the 2010 Reorganization. *See* Ind. Code §§ 36-1.5-4-1(b)(3), -38(c) (2013). Neither of Zionsville's reorganizations presents any incursion into the municipal boundaries of Whitestown and thus do not substantively impair Whitestown's rights. In adopting the GMA in 2006, the legislature chose to require only 150 feet of adjacency, Ind. Code § 36-1.5-4-2, not the contiguity required for annexation, Ind. Code § 36-4-3-1.5. We decline to judicially superimpose on the GMA the contiguity requirements of the statutory annexation procedure.

It is undisputed that the small parcel, which was part of the unincorporated area of Eagle Township before the 2010 Reorganization, thereafter became part of the resulting reorganized governmental entity known as the Town of Zionsville. We thus conclude that reorganized Zionsville, acting with the powers of a township transferred to it in the 2010 Reorganization, was adjacent to Perry Township by more than 150 feet in 2014 and thereby was eligible to reorganize with Perry Township under the 2014 Zionsville-Perry Reorganization plan.

Because we find that Zionsville, in the exercise of township powers transferred to it as a result of the 2010 Reorganization plan, is authorized to seek further reorganization under the GMA, we decline to address Zionsville's alternative claim that, in addition to its power to act with the powers of a township, it may also reorganize with Perry Township under its town status as a municipality under Indiana Code Section 36-1.5-4-1(a)(7),[7] which does not require that the two entities be adjacent to each other, but rather that the municipality be "located in any part of the same township." Zionsville argues that following its 2010 Reorganization it became a part of Perry Township as the least-populated, contiguous township to itself under Indiana Code § 36-6-1-12 (1993),[8] and thus, if found to lack the powers of a township to further reorganize, could alternatively reorganize with Perry Township as a municipality within the township. We need not consider this alternative argument.

---

[7] "Any of the following may reorganize under this chapter: * * * (7) A township and a municipality that is located in any part of the same township."

[8] This statute provides: "If any territory in a county is not included in one (1) of the townships established under this chapter, the territory is included in the township that: (1) is contiguous to that territory; and (2) contains the least population of all townships contiguous to that territory." Ind. Code § 36-6-1-12 (1993).

13

*b. Adequacy of Voting Blocs Used for 2014 Zionsville-Perry Reorganization*

Whitestown also challenges the 2014 Zionsville-Perry Reorganization on grounds that the plan's voting areas do not comply with GMA requirements. In a reorganization under Indiana Code § 36-1.5-4-1(a)(2), the GMA requires that a "majority of the voters in each reorganizing political subdivision" must "approve . . . the reorganization." Ind. Code § 36-1.5-4-32(a) (2013). Whitestown argues that the 2014 Zionsville-Perry Reorganization failed to satisfy the following statutory requirement:

> If a reorganizing political subdivision includes the territory of another reorganizing political subdivision, the vote of voters of a reorganizing political subdivision who also are voters in a second reorganizing political subdivision that is geographically larger than the first political subdivision and that includes the territory of the first political subdivision shall be included only in the tally of votes for the first reorganizing political subdivision in which the voters reside.

Ind. Code §36-1.5-4-32(a) (2013).[9] Whitestown urges that this provision requires a separate voting tally for voters in each of the former townships and municipalities that comprised the 2010 Reorganization. We disagree.

As applied to the 2014 Zionsville-Perry Reorganization, the phrase "each reorganizing political subdivision," Ind. Code § 36-1.5-4-32(a), includes only two units: the reorganizing portions of Perry Township[10] and the previously reorganized Town of Zionsville. These two reorganizing units do not overlap, and thus the GMA provision regarding territory situated in more than one reorganizing political subdivision is not applicable. *See* Ind. Code § 36-1.5-4-32(a) (2013).[11] The 2014 Zionsville-Perry Reorganization plan is not invalid because of its failure to require a separate voting tally for each of the political subdivisions participating in the

---

[9] This section was amended in 2013 and had an effective date of January 1, 2014, well before the voting date of November 4, 2014 that affects the parties.

[10] Under the 2014 Zionsville-Perry Reorganization plan, the reorganizing portion of Perry Township was identified as "all areas of Perry Township not within the municipal limits of Whitestown or Lebanon at 11:59 pm on December 31, 2014, or at any time thereafter." Appellant's App'x at 0348.

[11] Whitestown's argument would apply if Zionsville were a reorganizing township; but Zionsville is reorganizing under Indiana Code Section 36-1.5-4-1(a)(2) as a town exercising township powers.

2010 Reorganization.[12]

*c. Effect of the Trial Court Judgment on the Voter Approval of the 2014 Reorganization*

Whitestown does not dispute that the 2014 Zionsville-Perry Reorganization plan was submitted to the voters of Zionsville and the reorganizing portions of Perry Township, but rather it claims (in addition to asserting that voting blocs must be separately tallied as discussed above) that the resulting election was meaningless because it occurred after the trial court's order declaring the reorganization and its voting areas to be invalid.

While ruling that Zionsville and Perry Township cannot reorganize and that the 2014 Zionsville-Perry Reorganization plan was invalid, the trial court did not order removal of the reorganization question from the ballot. On October 7, 2014, the same day that the trial court order was issued, Zionsville filed its motion to stay the order and allow the November 4th ballot question on the reorganization, but the trial court denied the stay. Whitestown did not seek, and the trial court did not order, removal of the question from the November 4, 2014 general ballot. Whitestown explained: "The Perry Plan is already on the ballots, voters are already voting on it, and Whitestown has not moved to have it removed because it is impossible to do so given that early voting has already begun." Appellant's App'x at 0681. Whitestown now contends that the November vote on the 2014 Zionsville-Perry Reorganization is "meaningless" because voters cannot "approve an illegal and void public question" as a matter of law. Appellee's Br. at 41. In addition, Whitestown suggests that the election results are unreliable because the trial court's decision invalidating the reorganization may have minimized election participation from voters who might otherwise have voted "no" on the ballot question.

The effect of the 2014 general election vote on the 2014 Zionsville-Perry Reorganization was not an issue in the summary judgment proceedings in the trial court. The election occurred

---

[12] Whitestown also argues that Indiana Code § 36-1.5-4-32(b) (2013) imposes additional voting bloc requirements. Because we uphold the 2014 Zionsville-Perry Reorganization under Indiana Code Section 36-1.5-4-1(a)(2) instead of under -1(a)(7), these requirements do not apply. *See* Ind. Code § 36-1.5-4-32(b) (2013) ("This subsection applies only to a reorganization described in section 1(a)(7) of this chapter.").

15

one month after the trial court issued the ruling on appeal.  Details regarding the election administration and results are not presented in any of the designated evidence.  The facts and circumstances of this election arose after the entry of the trial court order that is the subject of this appeal.  The effect of the trial court judgment on the ensuing 2014 general election reorganization plan vote is not before this Court for resolution in this appeal.

### 3.  Whitestown's Annexation of Territory Included in the Reorganization Plans

In granting Whitestown's motion for summary judgment, the trial court not only found the 2014 Zionsville-Perry Reorganization to be invalid but also concluded that neither the 2010 nor the 2014 Zionsville reorganizations, even if valid, prohibited Whitestown's annexations. The trial court authorized Whitestown to proceed with annexations not only as to territory within the 2014 Zionsville-Perry Reorganization but also as to territory within the 2010 Reorganization. Zionsville challenges these determinations on appeal, alternatively arguing (a) that Indiana law prohibits annexations by one municipality within the borders of another, and (b) that Whitestown failed to timely initiate the proposed annexations.

A resolution authorizing Zionsville and Perry Township to participate in a proposed reorganization was passed on April 18, 2014 by the Perry Township Trustee and the Perry Township Advisory Board and on April 21, 2014 by the Zionsville Town Council. The next day, April 22, 2014, four proposed annexation resolutions were introduced at the Whitestown Town Council. Two of the proposed Whitestown annexations involved only Perry Township territory included in the 2014 Zionsville-Perry Reorganization, one included only territory within the boundaries of Zionsville as reorganized in 2010, and one included territory both from Zionsville's 2010 Reorganization and from the proposed 2014 Zionsville-Perry Reorganization.[13] The 2014 Zionsville-Perry Reorganization plan was finally adopted by Zionsville and Perry

---

[13] Ordinance 2014-12, the "2014 Perry West Annexation," and Ordinance 2014-13, the "2014 Perry Northwest Annexation," included only Perry Township territory.  Ordinance 2014-14, the "2014 South Annexation," included parts of Perry Township and of former Eagle Township now in reorganized Zionsville.  Ordinance 2014-15, the "2014 Whitestown Parkway Annexation," consisted of former Eagle Township territory now in reorganized Zionsville.   *See* Whitestown's Complaint at Appellant's App'x at 0043.

Township on May 20, 2014.[14]

*a. General Power to Annex Territory Included in a Reorganization Plan*

Zionsville and Whitestown dispute whether the Whitestown annexation proceedings are prohibited under Indiana's statutory municipal annexation statutes that declare "a municipality may not annex territory that is inside the corporate boundaries of *another municipality*. . . ." Ind. Code § 36-4-3-2 (1980) (emphasis added). Whitestown argues that (a) Zionsville should not be considered "another municipality" because it "has been acting as a township" rather than a town since its 2010 Reorganization, and (b) the annexation statutes defer to the GMA provision permitting annexation of territory within a township after the lapse of a time period that has occurred. Appellee's Br. at 54-55.

The 2014 Zionsville-Perry Reorganization plan expressly declared that, upon approval of the plan, the resulting reorganized political subdivision "shall be known as the Town of Zionsville, a municipality." Appellant's App'x at 0350. Under the plan, all of the unincorporated territory in the former Perry Township included in the reorganization was to become a part of the new municipality of Zionsville and to be included within its corporate boundaries. We find that the subsequent exercise of township powers by Zionsville as authorized by the GMA does *not* change its status from a town to a township, nor does such exercise of township powers diminish its protection as a municipality under Indiana Code Section 36-4-3-2 from invasive annexations. All territory within reorganized Zionsville, including the former Perry, Eagle, and Union Township territories, whether through the 2010 Reorganization or through the 2014 Zionsville-Perry Reorganization, would thereby fall within the new corporate boundaries of reorganized Zionsville and thus be shielded from annexation by Indiana Code Section 36-4-3-2.

Whitestown asserts that its right to annex is governed instead by a new provision in

---

[14] Zionsville reports that after the May 20, 2014 adoption of its plan to reorganize with Perry Township, "On November 12, 2014, . . . Whitestown adopted fiscal plans for the Proposed Zionsville Annexations," which "seek to annex territory within Zionsville in the area formerly governed by Eagle Township and now within Zionsville." Appellant's Br. at 6, 7 (citing Motion to Expedite at 7).

Indiana's municipal annexation statutes that, as applied to the present parties, provides: "If a township is a participant in a proposed reorganization . . . , a municipality may not adopt an annexation ordinance annexing territory within the township *within the period set forth in IC 36-1.5-4-45*."  Ind. Code § 36-4-3-1.4 (2013) (emphasis added).  Whitestown observes that this time period "had already elapsed," Appellee's Br. at 55, thus implying that all the annexations may proceed.  This municipal annexation time period references a time period in a corollary provision in the GMA, which provides in relevant part:

> (b) A political subdivision may not take any of the following actions partially or wholly within a reorganizing political subdivision after the date on which a plan of reorganization is finally adopted by all reorganizing political subdivisions unless all reorganizing political subdivisions agree by adopting identical resolutions:
>> (1) *Initiate an annexation of territory.*
>> (2) Establish a fire protection territory or fire protection district.
>> (3) Extend water, sewer, or any other infrastructure to the political subdivision.
>> (4) Expand zoning jurisdiction under IC 36-7-4-205.
>> \* \* \*
> (e) If a reorganization is approved by the voters under section 34 of this chapter,[15] a political subdivision may not take an action under subsection (b) until the earlier of the following:
>> (1) The plan of reorganization has been implemented.
>> (2)  One (1) year after the date on which the reorganization is approved under section 34 of this chapter.

Ind. Code § 36-1.5-4-45 (2013) (emphasis added).  Thus the interim prohibition of annexation of territory in townships participating in a proposed GMA reorganization, Indiana Code Section 36-4-3-1.4, would expire upon the implementation of a GMA reorganization or one year after the date of its approval by voters, whichever is earlier.  Section 1.4 is not limited to the *initiation* of annexation attempts, but explicitly prohibits any *final* adoption of "an annexation ordinance annexing territory within the township. . . ." Ind. Code § 36-4-3-1.4 (2013).

In the present case, Perry Township became a participant in a proposed reorganization with Zionsville on April 21, 2014, when both Zionsville and Perry Township had adopted reciprocal resolutions to prepare a plan of reorganization.  Such plan was finally adopted by the

---

[15] The "date on which the reorganization is approved" refers to approval by a "majority of the voters of each of the reorganizing political subdivisions voting on . . . the reorganization." *See* Ind. Code § 36-1.5-4-34 (2013).

reorganizing political subdivisions on May 20, 2014 and was to be submitted to the voters in the reorganizing political subdivisions in the general election of November 4, 2014.[16] The plan specified an effective date of January 1, 2015. Assuming its approval in the 2014 general election, the interim prohibition on annexation of territory in a reorganizing township expired January 1, 2015, the plan's implementation date. Whitestown is correct that the interim prohibition against its annexation of Perry Township territory elapsed. But Whitestown does not claim that it thereafter completed the adoption of any of its disputed annexation ordinances annexing territory in Perry Township or in reorganized Zionsville. To the contrary, Perry Township became a part of the municipality of Zionsville on the 2014 Zionsville-Perry Reorganization plan's effective date of January 1, 2015. From that point forward, Indiana Code Section 36-4-3-2 protected it from Whitestown's attempted annexations.

We conclude that Section 36-4-3-2 of the municipal annexation statutes prohibits Whitestown (a) from annexing territory within former townships reorganized with the Town of Zionsville in 2010 and (b) from annexing territory in Perry Township included in the 2014 Zionsville-Perry Reorganization.

### b. "First-in-Time" Rule

Notwithstanding such prohibitions against annexation, however, Whitestown argues that first-in-time principles allow it to complete its 2014 proposed annexations. As this Court has long held, "[t]he first-in-time jurisdictional rule applies 'when there exist two tribunals possessing concurrent and complete jurisdiction of a subject-matter.'" Brenwick Assocs., LLC v. Boone Cty. Redev. Comm'n., 889 N.E.2d 289, 294 (Ind. 2008) (quoting Taylor v. City of Ft. Wayne, 47 Ind. 274, 282 (Ind. 1874)). Whitestown specifically argues that because it "initiated its annexations when it introduced the ordinances at a public council meeting [on April 22, 2014] . . . . it had exclusive authority to proceed on them, and neither [the GMA] nor the Perry Plan

---

[16] The trial court judgment on appeal preceded by about one month the general election of November 4, 2014, and thus the record on appeal does not establish the fact of the election or the voter approval of the 2014 Zionsville-Perry Reorganization plan. In a post-appeal motion, however, Zionsville represents that the plan was submitted to voters, who approved the reorganization. Appellant's Verified Motion to Expedite Appeal, filed December 2, 2014, at 4.

19

prevented its annexations."  Appellee's Br. at 45.  Zionsville argues alternatively that (a) the mere introduction of the annexation ordinances was insufficient to initiate exclusive jurisdiction under the first-in-time rule, and (b) even if Whitestown did initiate its annexations, "Perry Township and Zionsville took the steps necessary to initiate the Perry Reorganization *before* Whitestown even introduced its annexation ordinance."  Appellant's Br. at 41 (emphasis in original).  The parties thus dispute what constitutes an "initiation" under the first-in-time rule, and which party was first to initiate.

It is undisputed that Perry Township and Zionsville both resolved to pursue reorganization on April 18, 2014, and April 21, 2014, respectively, and that annexation ordinances were introduced at the Whitestown Town Council meeting on April 22, 2014.  As to Perry Township and Zionsville, the point in time of "initiation" is resolved by the GMA itself, which declares, "[t]he legislative body of a political subdivision may *initiate* a proposed reorganization under this chapter by adopting a resolution that: (1) proposes a reorganization; and (2) names the political subdivisions that would be reorganized in the proposed reorganization." Ind. Code § 36-1.5-4-10(a) (2013) (emphasis added).  The resolutions of Zionsville and Perry Township meet these requirements.  The resolution adopted by Zionsville was titled "A Resolution of the Zionsville Town Council to Participate in the Proposed Reorganization with Perry Township. . . ."  Appellant's App'x at 0344.  That resolution also noted that "the Board of Perry Township unanimously adopted Resolution No. 2014-01 on April 18, 2014 *proposing a reorganization with the Town [of Zionsville]* . . . ." *Id.* (emphasis added).  Zionsville's Town Council further resolved that "the Town of Zionsville and Perry Township . . . shall reorganize and/or enter into a cooperative agreement" and that "[t]he legislative bodies of Perry Township and the Town of Zionsville shall prepare a plan of reorganization . . . ." *Id.*  This resolution recognized Perry Township's proposal of reorganization, resolved to participate in that reorganization, and specifically identified at several points that the reorganizing entities were Zionsville and Perry Township.

Whitestown argues that the resolution did not initiate reorganization because "Zionsville and Perry Township had *not resolved to reorganize* because they were alternatively pursuing a

20

cooperative agreement."  Appellee's Br. at 49 (emphasis in original).  The GMA's language is clear, however, that to initiate a reorganization, all that is required is for a political subdivision to adopt a resolution proposing a reorganization and naming the other participating political subdivision(s).  The Perry Township/Zionsville resolutions met these requirements, and the included alternative option to enter into a cooperative agreement has no bearing under the statute.[17]  Thus, regardless of whether the introduction of the proposed annexation ordinances at the Whitestown Town Council constituted an "initiation," the reorganization of Zionsville and Perry Township was initiated first-in-time.

We therefore conclude that, under the first-in-time rule, Whitestown may not complete its proposed annexations of territory in the former Eagle Township reorganized with Zionsville in 2010, nor complete its proposed annexations of Perry Township territory included in the reorganized Zionsville that results from the 2014 Zionsville-Perry Reorganization.

## Conclusion

The parties' opposing motions for summary judgment presented the trial court with competing claims as to the power of Zionsville to engage with Perry Township in a reorganization under the Government Modernization Act, as to the power of Whitestown to annex Perry Township territory within such reorganization, and also as to the power of Whitestown to annex territory within Zionsville's 2010 Reorganization.  These competing claims present issues of law, and we now hold that the 2014 Zionsville-Perry Reorganization is not prohibited and that Whitestown may not adopt annexation ordinances annexing territory in municipalities that are the result of completed reorganizations under the Act.  The judgment of the trial court is reversed.  This cause is remanded for further proceedings consistent with this

---

[17] Whitestown also argues that under Indiana Code Section 36-1.5-4-45, a GMA reorganization is initiated only upon the final adoption of a plan of reorganization by all reorganizing political subdivisions. We disagree and find that the point in time when "initiation" occurs is controlled by Indiana Code Section 36-1.5-4-10(a).

21

opinion.[18]

Rush, C.J., Rucker, and Massa, J.J., concur.

David, J., not participating.

---

[18] Whitestown's Verified Motion for Order Clarifying And Enforcing Appellate Rule 65(E), seeking to preclude Zionsville from taking any further action until the final termination of this appeal, is now denied as moot.